## NEW YORK COMMON PLEAS.

Robert Ferdon, respondent, agt. Obadiah N. Cunningham, appellant.

A person performing services as a *public cartman* in the city of New York, *without having a city license,* as such cartman, cannot recover for such services.

*December General Term,* 1860.

*Present,* Daly, *First Judge,* Brady *and* Hilton, *Judges.*

This action came up on appeal from a judgment of the marine court of this city, in favor of the respondent, and against the appellant, for the sum of $220.46, rendered at

the trial term of said court, and affirmed at the general term thereof, with costs.

The facts in the case appear from the return to this court to be as follows: That the parties are residents of the city of New York; that between the 1st day of May, 1857, and the 1st day of November of the same year, the plaintiff, as a public cartman, performed services for the appellant, amounting to the sum of $175.75; that such services were rendered in the city of New York.

The appellant admitted the performance of said services, and that he had not paid for the same, but for a defence alleged that the respondent, at the time, had no license, pursuant to the ordinance of said city in relation to the "licensing and otherwise regulating the use and employment of carts and cartmen."

On the trial in the marine court, before Justice ALKER, the respondent admitted he had no license pursuant to said ordinance, which was read in evidence, and that he carted for other persons at or about the same time, for hire and reward. The said justice decided as matter of law that the respondent was entitled to recover, and ordered judgment as aforesaid, which the general term of said court affirmed.

G. O. HULSE *and* LUDOVIC BENNETT, *for appellant,*

submitted the following points:

1. The first section of the ordinance defines a public cart, and any person using such cart without first obtaining license therefor, as thereinafter provided, shall be guilty of a violation of this chapter.

Section "five" says, no public cart shall be driven or used within said city, except by a duly licensed public cartman.

Section 48 provides, that all persons who shall violate or fail to comply with any of the provisions of this chapter, shall be deemed guilty of a misdemeanor, and, on conviction

thereof, shall be punished, &c., or, in lieu thereof, shall forfeit and pay, &c.

2. The services rendered in this action were performed in violation of this ordinance.

3. This ordinance will receive the same construction as the one in the case reported in 5 *Sand. S. C. R.*, 153.

4. Every contract made for or about any matter or thing which is prohibited and made unlawful by statute, is a void contract. Though the statute does not mention that it shall be so, but only inflicts a penalty on the offender, because a penalty implies a prohibition, though there are no prohibiting words in the statute. (1 *Smith's L. Cases*, 502, *and cases;* 5 *Johns.*, 327, 335 ; 3 *Denio*, 226, *and cases;* 12 *Barb.*, 21, *and cases;* 5 *Sand.*, 153.)

CRAM & FOWLER, *for respondent,*

submitted the following points :

1. The ordinance of the common council no where prohibits carting, or declares that contracts made by unlicensed cartmen shall be void : it only provides that a cartman shall take out a license; if he do not, he is guilty of a violation of the ordinance, and may be punished as therein provided; but he cannot be punished in another and different manner. The ordinance is penal in its provisions, and must be construed strictly. (2 *Story on Con., p.* 60.)

2. The ordinance is merely directory. There is nothing in the ordinance which looks to the *avoiding* of *contracts,* as the *means* by which *prohibition* is to be enforced, and cartmen compelled to take out a license. But if so, that remedy should be confined solely to the party wronged— the corporation. (*Brown* agt. *Duncan,* 10 *B. & C.,* 93.)

3. The contract in question is not in direct violation of the ordinance ; it is only collaterally connected with it, and is therefore valid.

" Where a person sold tobacco, without previously com-

plying with the statute regulations as to obtaining a license, it was held that he might sue the vendee for the price, since the contract of sale was wholly *independent* and *collateral* to the *illegality.*" (*Johnson* agt. *Hudson*, 11 *East R.*, 180; *Story on Con.*, 747, 748.)

4. When the object of a statute is for the purpose of raising revenue—as for instance, that persons dealing in a particular kind of goods should take out a *license* for the *sale* thereof, and *inflicting* a *penalty* on the *seller* in case he does not—*there* is no *intention* of *prohibiting* a contract for the *sale* of *such goods*, and an *unlicensed vendor* can recover the price thereof. (*Chitty on Con.*, *ed. of* 1848, *p.* 419, 420, *and cases there cited*; 3 *Denio*, 226.)

5. The cases relied on by defendant are not in point.

The case of *Hunt* agt. *Knickerbocker*, (5 *Johns.*, 326,) was an action brought to recover the price of lottery tickets deposited with defendant as agent for sale, and sold by him. Held that plaintiff could not recover because lotteries are contrary to public policy and unlawful, and the statute delares that " all contracts, agreements, and securities given, made, or executed for or on account of the same (lotteries) shall be utterly void. (2 *R. S.*, *5th ed.*, *p.* 929, § 31.)

The case of *Beman* agt. *Tugnot*, (5 *Sand.*, 153,) was an action brought to recover the contract price for constructing a roof on defendant's house, to be fire proof, and constructed in a manner to be approved by fire department, and in accordance with the fire laws of the city. The roof was not so constructed, but was constructed in direct violation of the fire laws, and defendant was compelled to remove the same in consequence thereof.

On the above facts, the *jury* found a verdict for defendant, and the court on appeal, sustained the same.

The case of *Bell* agt. *Quin*, (2 *Sand.*, 146,) was an action on a promissory note, payable to Williams & Ferguson, and endorsed by them to plaintiff. Williams, one of the makers, at the time of giving the note, was an alderman of the city

of New York, and interested in a contract for supplying the alms-house with coal. The note in question was given for Williams & Ferguson's share of the profits growing out of such contract. ·

As the charter of the city provides, " that no member of the common council shall, during the period for which he was elected, be directly or indirectly interested in any contract, the expenses or consideration whereof are to be paid under any ordinance of the common council," the court properly decided that plaintiff could not recover.