# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

### APRIL TERM, 1882.

[No. 1102.]

## F. MANDLEBAUM, APPELLANT, v. M. P. GREGOVICH, RESPONDENT.

TRAVELING MERCHANT—FAILURE TO PROCURE LICENSE.—A traveling merchant who has sold goods, wares and merchandise without having procured the license required by section 67 of the revenue act, can maintain an action for their value.

IDEM—SECTION 67 OF THE REVENUE ACT CONSTRUED.—This section does not prohibit the sale of goods by any person who has failed to procure the license; but it imposes a penalty against every one who sells or offers for sale any goods without having a license so to do. The penalty attaches to the person, and does not affect the contract of sale.

IDEM—Section 67 was not enacted for the purpose of prohibiting or regulating the business of selling goods, but was intended to raise money for revenue purposes; to compel traveling merchants to contribute to the revenue of the state for carrying on and conducting their business within the state.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

Defendant moved the court below to discharge the attachment, which had been issued in the case, upon the ground that the goods, wares and merchandise mentioned in plaintiff's

complaint, and to recover the price of which this action was brought, were sold in Carson City, Nevada, by plaintiff, F. Mandlebaum and Wm. Lewis, merchants residing in San Francisco, state of California, and having no place of business in the state of Nevada, and by the traveling agents, salesmen or drummers of said Mandlebaum & Lewis, and that at the time of such sale of said goods, wares and merchandise neither said Mandlebaum nor said Wm. Lewis, nor either of the traveling agents, solicitors or drummers of said Mandlebaum & Lewis had taken out, applied for or paid for the traveling merchant's, agent's, salesman's or drummer's license as required by section 67 of an act entitled "An act to provide revenue for the support of the government of the state," approved March 9, 1865, as amended February 29, 1877. At the hearing of said motion it was admitted by plaintiff that neither said Mandlebaum nor said Lewis, nor either of their traveling agents or salesmen, had procured, applied for or paid for such license at the time of the sale of said goods, nor had either of said parties at any time since the sale of said goods procured, had or applied for such license, and that all of the facts as above stated were within the knowledge of plaintiff at the time of the bringing of this action. The court dissolved the attachment, and, upon an agreed statement of facts, rendered judgment for defendant.

*Trenmor Coffin*, for Appellant.

I. Whatever illegality or violation of law may have existed on the part of Mandlebaum formed no part of the contract between Mandlebaum and Gregovich. That contract was, in itself, complete and legal—absolutely untainted with illegality. (*Drexler* v. *Tyrrell,* 15 Nev. 135, 140; *Aiken* v. *Blasdel,* 41 Vt. 664; *Armstrong* v. *Toler,* 11 Wheat. 258; *Biggs* v. *Lawrence,* 3 T. R. 454; *Clugas* v. *Penaluna,* 4 T. R. 466; *Johnson* v. *Hudson,* 11 East. 180; *Brown* v. *Duncan,* 10 Barn. & Cres. 93; Storey on Contracts, sec. 762; *Smith* v. *Mawhood,* 14 Mes. & Wels. 452; *Witherell* v. *Jones,* 3 Barn. & Ad. 221; *McBlair* v. *Gibbs,* 17 How. 236–7.)

II. There are numerous decided cases in which contracts have been held void upon the ground that the subject matter

of the contract was forbidden by statute or against public policy, or where the contract in itself contemplated the violation of a statute, or was in violation of some statute enacted for the protection of the public against fraud, or for the improvement or protection of the public health and morals. But in every case the distinction has been preserved and the contract only declared void after applying the test as stated by Mr. Smith, in his law of contracts, in *Drexler* v. *Tyrrell.* (*Law* v. *Hodgson*, 2 Camp. 147; *Foster* v. *Taylor*, 5 Barn. & Adol. 887; *Cope* v. *Rowlands*, 2 Mes. & Wels. 157; *Madison Ins. Co.* v. *Forsythe*, 2 Ind. 483; *Roby* v. *West*, 4 N. H. 285; *Carlton* v. *Whitcher*, 5 N. H. 289; *Brackett* v. *Hoyt*, 29 N. H. 264; *Coburn* v. *Odell*, 30 N. H. 540; *Smith* v. *City of Albany*, 7 Lans. 14; *Dillon* v. *Allen*, 46 Iowa 299; *Ingersoll* v. *Randall*, 14 Minn. 400; *Woods* v. *Armstrong*, 54 Ala. 150; *Aiken* v. *Blasdel*, 41 Vt. 664; *The Pioneer*, Deady C. C. 72; *Siedenbender* v. *Charles*, 4 Serg. & Rawle 159; *Hale* v. *Henderson*, 4 Hump: 199; *Spaulding* v. *Preston*, 21 Vt. 9; *Bancroft* v. *Dumas*, 21 Vt. 459.)

III. The sale of merchandise is not unlawful; the *corpus delicti* prescribed by the statute is the failure to procure the license. The contract of sale was not forbidden. It is therefore valid. (*Dillon* v. *Allen*, 46 Iowa, 302; *Hill* v. *Smith*, Morris, Iowa, 73.)

IV. Where it is enacted in express terms that a contract of sale made without a license "shall be void," the courts have refused to enforce the contracts where the contractor had not first complied with the statute. (34 N. Y. Sup. Ct. 277; *Swords* v. *Owen*, 43 How. Pr. 176; *Bull* v. *Harragan*, 17 B. Mon. 349; Rev. Stat. Ky. 1852, 558, sec. 8.)

V. And under statutes forbidding the sale of an article not of a given quality, or that a person should not practice a profession until he had attained a sufficient degree of proficiency, the quality or proficiency to be ascertained in a mode prescribed by law, the courts have held that the contracts would not be enforced when the law had not been complied with. (*Law* v. *Hodgson*, 2 Camp. 147; *Foster* v. *Taylor*, 5 Barn. & Adol. 887; *Woods* v, *Armstrong*, 54 Ala. 150; *Wheeler* v.

*Russell*, 17 Mass. 258; *The Pioneer*, Deady 72.) In all of these cases the contract was held void upon the ground that the subject matter was forbidden. In the case at bar the violation was no part of the subject matter of the contract, was not within the knowledge of one of the contracting parties, and the subject matter of the contract, the sale and delivery of merchandise, is in nowise prohibited by implication or otherwise, but on the contrary is encouraged and protected by the policy of the law.

VI. All contracts, the subject of which is legal, are valid unless expressly prohibited. (*Harris* v. *Runnels*, 12 How. 83; *Solomon* v. *Dreschler*, 4 Minn. 278; *Bibb* v. *Miller*, 11 Bush, Ky. 309.)

VII. The statute is essentially a revenue measure, designed to raise revenue from a business esteemed by the legislature as very profitable, and authorizing the requisition of a tax from whomsoever may think proper to engage in the business of trading. A merchant may make a valid and binding contract in trade, notwithstanding he may incur a penalty by failing to contribute the revenue. (Comp. L. 3181, 3189; *Aiken* v. *Blasdel*, 41 Vt. 664; *Griffith* v. *Wells*, 3 Den. 226; *Lindsey* v. *Rutherford*, 17 B. Mon. 245; *Mohney* v. *Cook*, 26 Penn. St. 349.)

VIII. The merchandise sold in the case at bar was cigars, tobacco and liquors. It has been held by some of the New England and Eastern States that their peculiar statutes licensing the sale of these particular articles looked beyond the mere raising of revenue, and to the protection and improvement of public morals by bringing the traffic in liquors under police regulations, and that contracts of sale of intoxicating drinks by unlicensed dealers were *contra bonos mores*, and therefore void. (*Solomon* v. *Dreschler*, 4 Minn. 278; *Nourse* v. *Pope*, 13 Allen, 87; *Coburn* v. *Odell*, 30 N. H. 540; *Aiken* v. *Blasdel*, 41 Vt. 668; *Griffith* v. *Wells*, 3 Den. 226; *Bancroft* v. *Dumas*, 21 Vt. 462.) But certainly no such argument can be advanced in this state, for the business of traffic in intoxicating liquors is not sought to be controlled or regulated; any and all persons may engage in the trade when and where they please. There are absolutely no restrictions; no

one has authority under any circumstances to refuse to grant the license, nor to molest, hinder or restrain the sale of liquors upon any occasion. The policy of our revenue act is manifestly to prohibit or regulate nothing, but to recognize and demand revenue from everything, from industry and vice alike.

IX. As a matter of practice the court erred in dissolving the attachment. The suit was upon a contract for the direct payment of money, made within the state of Nevada, the payment of which was not secured, and so long as such a suit was pending, plaintiff was entitled to an attachment to answer any judgment he might finally obtain. (1 Comp. L. 1184.) To dissolve the attachment upon the ground that plaintiff could not recover in the action, was to adjudicate plaintiff's ultimate rights upon a preliminary motion. The order dissolving the attachment will be reviewed on appeal. (*Williams* v. *Glasgow*, 1 Nev. 537.)

*James D. Torreyson*, for Respondent:

I. The statute authorizing "traveling merchants" to vend goods *when the license is issued*, impliedly *forbids* them to vend goods without such license. *Expressio unius est exclusio alterius.* (Broom's Leg. Max., sec. 653; *North Stafford S. Co.* v. *Ward*, 3 Ex. L. R. 172, 177.)

II. A statute may either *expressly* prohibit an act, or it may *impliedly* prohibit it by affixing a penalty to the performance thereof. It makes no difference whether the prohibition be express or implied; in either case a contract in violation of its provisions is void. (1 Storey on Contracts, sec. 614; *De Begins* v. *Armistead*, 10 Bing. 107; *Witherell* v. *Jones*, 3 Barn. & Ad. 221; *Bell* v. *Quinn*, 2 Sandf. 146; *Barton* v. *Port Jackson*, 17 Barb. 404.) A penalty implies a prohibition, *though there be no prohibitory words in the statute.* An agreement in violation of a statute prohibiting or enjoining an act absolutely or *only under a penalty* cannot be enforced. (*Bartlett* v. *Vinor*, Carth. 252; *Mitchell* v. *Smith*, 1 Binn. 110, 117; *Woods & Co.* v. *Armstrong*, 54 Ala. 150, 153; *Griffith* v. *Wells*, 3 Den. 226; *Ferdon* v. *Cunningham*, 20 How. Pr. 154; *Best* v. *Bauder*, 29 How. Pr. 489, 492; *Swords*

v. *Owen*, 43 How. 176; *Hallet* v. *Novion*, 14 John. 290; 1 Pow. Cont. 195; *Bensley* v. *Bignold*, 5 B. & Ald. 335; *D'Allex* v. *Jones*, 37 Eng. L. & Eq. 475; *Roby* v. *West*, 4 N. H. 285; *Carlton* v. *Whitcher*, 5 N. H. 196; *Brackett* v. *Hoyt*, 29 N. H. 540; *Cope* v. *Rowlands*, 2 M. & W. 157; *Law* v. *Hodgson*, 2 Camp. 147; *Lyon* v. *Strong*, 6 Vt. 219, 224; *Pattee* v. *Greely*, 13 Met. 284; *Langton* v. *Hughes*, 1 M. & S. 593; *Gregg* v. *Wyman*, 4 Cush. 322; *Woods* v. *Armstrong*, 25 Am. R. 671.)

IV. There is no difference (and the authorities make none) between a law that prohibits an act and imposes a penalty and a law that imposes a penalty and thereby prohibits an act. The act is prohibited in both cases. The taking out of the license is made a *condition precedent* to the selling of goods.

By the Court, HAWLEY, J.:

The only question to be determined in this case is whether or not a traveling merchant, who has sold goods, wares and merchandise without having procured the license required by section 67 of the revenue act, can maintain an action to recover their value.

This section provides that: "Every traveling merchant * * * selling or offering to sell any goods * * * shall pay for such license twenty-five dollars per month, * * * and it is hereby made the duty of * * * all peace officers to demand the license of any such * * * drummer or other person named herein, and if such person be found not to have a license as required by law, the person so offering any goods, wares or merchandise for sale shall be guilty of a misdemeanor, and on conviction shall be fined in any sum not less than fifty nor more than five hundred dollars." (Stat. 1877, 79.)

This section does not prohibit the sale of goods by any person who has failed to procure the license, but it imposes a penalty against every one who sells or offers for sale any goods, wares and merchandise without having the license so to do.

The penalty only attaches to the person who violates the provisions of the law. It does not affect the contract for the sale of the goods. The fine is imposed not for selling the goods, but for the failure to procure the license.

Numerous authorities are cited by respondent's counsel, which announce the general doctrine "that a penalty implies a prohibition, though there be no prohibitory words in the statute, and that an agreement in violation of the statute prohibiting or enjoining an act absolutely or only under a penalty cannot be enforced."

This principle is applied in all cases where the subject matter of the contract is forbidden by the statute (*Brackett* v. *Hoyt*, 29 N. H. 264; *Williams* v. *Tappan*, 23 N. H. 391; *Bull* v. *Harragan*, 17 B. Mon. 352; *Ferdon* v. *Cunningham*, 20 How. Pr. 154; *Best* v. *Bauder*, 29 How. Pr. 492; *Swords* v. *Owen*, 43 How. Pr. 176), or is in violation of a statute for the protection of the public against imposition or fraud (*Woods* v. *Armstrong*, 54 Ala. 154; *Bensley* v. *Bignold*, 5 Barn. & Ad. 335; *D'Allex* v. *Jones*, 37 Eng. Law & Eq. 475), or for the protection of the public health or morals (*Griffith* v. *Wells*, 3 Denio. 226), or where the contract is against public policy.

The case under consideration is clearly distinguishable from the cases cited by respondent's counsel. They have no special application to the facts of this case.

Section 67 of the revenue act of this state was not enacted for the purpose of prohibiting or regulating the business of selling goods, wares and merchandise.

We agree with the court in *Best* v. *Bauder*, supra., that if the statute made the contract illegal it would make no difference whether the license was imposed for revenue purposes or not. (Storey on Contracts, sec. 758.)

Although the court in *Best* v. *Bauder* questioned the correctness of the distinction stated in *Bell* v. *Quinn*, 2 Sandf. 146, and in *Griffith* v. *Wells*, supra., it nevertheless based its decision upon the ground that the statute contained "a direct prohibition against selling as a peddler without a license;" and that "irrespective of the penalty a peddler is * * * prohibited from selling his goods or commodities without a license."

Bronson, C. J., in delivering the opinion of the court in *Griffith* v. *Wells*, supra., said : "When a license to carry on a particular trade is required for the sole purpose of rais-

ing revenue, and the statute only inflicts a penalty by way of securing payment of the license money, it may be that a sale without a license would be valid.   *   *   *   But if the statute looks beyond the question of revenue, and has in view the protection of the public health or morals, or the prevention of frauds by the seller, then, though there .be nothing but a penalty, a contract which infringes the statute cannot be supported."

The distinction in the application of the principles relied upon by respondent is stated in clear, plain and explicit terms by the supreme court of Iowa in *Dillon* v. *Allen* : "The distinction between the cases may be made plain by a little further consideration.   In the case before us the statute forbids the use of threshing machines wanting in certain contrivances for the protection of those employed about them.   The contract in this case was for the use of such a machine, and was performed by such use.   The very act performed under the contract was forbidden by the statute, and the parties thereto were *in pari delicto*.   In the other cases   *   *   *   the statute provides that any person who shall sell a town lot before the plat is recorded, shall be subject to a prescribed penalty.   The statute does not forbid selling the lots before the plat is recorded, but fixes a penalty against the owner of the land plotted for failing to record the plat.   The sale is not unlawful; the *corpus delicto* prescribed in the statute is the omission to record the plat.   The purchaser was guilty of no violation of law; the contract was not forbidden.   It is therefore valid."   (46 Iowa 302.)

It is apparent, upon an examination of the revenue act, that the legislature did not intend to prohibit the sale of goods by a traveling merchant without a license, or to make such sales illegal.   This was not the object, intent or purpose of the law.

A license is required and a penalty imposed upon local merchants and persons engaged in other business in the same manner as upon the traveling merchants.

The legislature intended by section 67, as well as by other sections, to raise money for revenue purposes—to compel traveling merchants, as well as local merchants, to contribute to

the revenue of the state for carrying on and conducting their business within this state.

"The purpose," as was said by the court in *Aiken* v. *Blasdel,* "was not to diminish, restrain, control or regulate business. The transaction of all kinds of business was just as legal after the passage of the law as before. The law is strictly a revenue law, the sole object being to get money into the treasury, and that is accomplished by requiring all persons that engage in certain kinds of business to contribute a certain amount towards paying the liabilities of the government. Its object is to raise money, and not to regulate the business of the country. If a man engages in the kind of business referred to, he is engaged in a legal business, whether he has a license or not. If he has no license he has no legal right to do it, and subjects himself to the penalty. The law, we think, was intended to operate upon the person, and not upon the business. If the object of the law had been to prohibit certain kinds of business, or to regulate it with a view to its effect upon public morals or public security, by limiting it in its extent, or the place where it is to be carried on, or the persons who shall conduct it, or otherwise, in all such cases, the law operates upon the business as well as the person; revenue mainly in such cases is not the object—it is only incidental, or the means by which the law regulates and controls the business. The act in question imposes no restrictions upon the business; all are at liberty to engage therein where and when and to any extent they choose, upon paying for the license." (41 Vt. 666.)

We are of opinion that the plaintiff is entitled to maintain this action for the value of the goods, wares and merchandise sold and delivered to the defendant, notwithstanding the fact that at the time of the sale he had not procured the license required by section 67 of the revenue act. (*Drexler* v. *Tyrrell,* 15 Nev. 136–37; *Lindsey* v. *Rutherford,* 17 B. Mon. 245; *Hill* v. *Smith,* Morris, Iowa, 75; *Smith* v. *Mawhood,* 14 M. & W. 452; *Johnson* v. *Hudson,* 11 East. 180; *Brown* v. *Duncan,* 10 B. & C. 93; *Witherell* v. *Jones,* 3 Barn. & Ad. 222; *Armstrong* v. *Toler,* 11 Wheat. 260; Storey on Contracts, sec. 759, etc.)

The court erred in declaring the contract for the sale of the goods illegal, and it also erred in dissolving the attachment.

The judgment of the district court is reversed and the cause remanded for a new trial.