(June 10, 1897.)

# VERMONT LOAN AND TRUST COMPANY v. HOFFMAN.

[49 Pac. 314.]

ACT IN VIOLATION OF STATUTE—NOT VOID WHEN FOR PROTECTION OF PUBLIC REVENUE.—To the general rule that an act in violation of a statute forbidding it is void, there is an exception when the statute is for the protection of the public revenue, does not make the act itself void, and the act is not *malum in se* nor detrimental to good morals.

BUSINESS OF LOANING MONEY—MUST PAY A LICENSE TAX.—The statutes of Idaho require all persons engaged in the business of loaning money at interest, to pay a license tax and obtain a license before commencing such business, makes it a misdemeanor to fail to obtain such license, and provides that suit may be instituted to recover the license tax with stated damages. Plaintiff engaged in such business without obtaining the required license, loaned money at interest to H. *et ux.,* and took notes secured by mortgage. *Held,* that plaintiff could recover, the act of loaning money being neither *malum in se* nor *malum prohibitum.*

CONTRACTS—USURY—COMPOUND INTEREST.—Coupon notes given for the interest of the principal debt which, by their terms, draw interest after maturity are in contravention of section 1266 of the Revised Statutes, forbidding compound interest, and are usurious, and in such case no recovery can be had for any interest or cost.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

James E. Babb, for Appellants.

This is an appeal from the judgment and decree of foreclosure and sale of a real estate mortgage, entered in the above-entitled action. Notice of appeal was filed and served only by defendants, Bell Hoffman and Ross Hoffman, her husband. The complaint in the action alleged, so far as material, is: "That plaintiff is now, and was at all the dates hereinafter named, a corporation duly organized and existing under and by virtue of the laws of the state of North Dakota and doing business in the state of Idaho, under and in accordance with the laws of the state of Idaho," Then the execution of certain notes by Ross Hoffman and Bell Hoffman was alleged, and it was averred that "each of said principal notes and the interest coupons attached to each of said principal notes stipulated that they should bear interest after maturity at the rate of twelve per cent per annum." It then alleges the execution by said Ross Hoffman and Bell Hoffman, then husband and wife, of a mortgage to secure said notes and interest upon certain real estate in Nez Perces county, Idaho, "of which they were then the owners and in possession." It then alleges a default upon the notes and mortgages; that the other defendants have, or claim to have, some interest, etc., in the premises, but that their interests, etc., are subordinate, etc., to the lien of plaintiff. The prayer was for judgment and decree of foreclosure and sale, and for a personal judgment for deficiency if any, against defendants, Ross Hoffman and Bell Hoffman. The complaint contained no allegation that plaintiff had a known place of business in the state of Idaho, or that it had an authorized agent in the state upon which process might be served, as required by section 10 of article 11 of the constitution of Idaho, and no allegation showing that it had obtained a

license to engage in the business of loaning money at interest in Idaho, and no allegation that the debt secured was incurred for the use and benefit of the separate property of Bell Hoffman, or for her own use and benefit, as required by *Dernham v. Rowley,* 4 Idaho, 753, 44 Pac. 643. Defendants Ross Hoffman and Bell Hoffman filed an answer. To that answer plaintiff filed a general demurrer. The court sustained the demurrer to the answer, and Ross Hoffman and Bell Hoffman refused to plead further and their default was entered. Decree and foreclosure and sale was entered in the usual form, and contained, among other provisions, the following: "The sheriff specify the amount of such deficiency and balance due to the plaintiff in his return of said sale, and that on the coming in and filing of said return, the clerk of this court docket a judgment for such balance against the defendants, Ross Hoffman and Bell Hoffman, his wife, and that the defendants, Ross Hoffman and Bell Hoffman, pay to the plaintiff the amount of such deficiency and judgment with interest thereon at the rate of ten per cent per annum from the date of said last-mentioned return and judgment, and that the plaintiff have execution therefor against the property of the defendants, Ross Hoffman and Bell Hoffman, or either of them." Thereafter an order of sale issued on said decree, and a sale was had and return thereon made and filed showing a deficiency of $279.97. Sections 1636, 1644 and 6983 of the Revised Statutes of Idaho having prohibited engagement in the business of loaning money without a license and made it criminal so to do, plaintiff cannot recover on any business done without a license in violation of law. (*Stevenson v. Ewing,* 87 Tenn. 46, 9 S. W. 230; Cooley on Taxation, 2d ed., 572.) It is familiar law, both in England and America, that a contract prohibited either expressly or impliedly by statute is illegal, and cannot be enforced. (*Perkins v. Watson,* 2 Baxt. 187; *Ohio Life etc. Ins. Co. v. Insurance Co.,* 11 Humph. 11, 53 Am. Dec. 742; *Holt v. Green,* 73 Pa. St. 198, 13 Am. Rep. 737; *Dillon v. Allen,* 46 Iowa, 299; 26 Am. Rep. 145; *Woods v. Armstrong,* 54 Ala. 150, 25 Am. Rep. 671.) The license statute in question is not repealed by section 6 of article 7 of the constitution of Idaho, but is expressly affirmed

and continued in force by the provision of section 2, article 7, authorizing the "legislature" to "impose a license tax" upon persons and corporations. (*State v. Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516; *Yount v. Denning,* 52 Kan. 629, 35 Pac. 208; *San Jose v. San Jose etc. R. R. Co.,* 53 Cal. 478; 25 Am. & Eng. Ency. of Law, 14, 15.) That the deficiency decree against Bell Hoffman is error, see. *Dernham v. Rowley,* 4 Idaho, 753, 44 Pac. 643. That plaintiff should not have had a decree for more than the principal sum less all payments of principal and interest made and without interest or costs, see sections 1265 and 1266 of the Revised Statutes of Idaho. The statutes and constitutional provisions relied upon do not, as applied to this case, violate the interstate commerce clause of the federal constitution. (*Western Paper Bag Co. v. Johnson* (Tex. Civ. App., Dec. 23, 1896), 38 S. W. 364.)

A. E. Gallagher and Forney, Smith & Moore, for Respondent.

Appellants quote at length in their brief from several authorities for the purpose of showing that plaintiff cannot recover because it has not obtained the license as prescribed by sections 1636 and 1644 of the Idaho code. An examination of the authorities cited by appellants, and of the statutes upon which the decisions are based, disclose the fact that every one of these cases are clearly distinguishable from the present case, and that there is a wide and plain difference in the wording and object of the statutes on which those decisions are based and the statutes of Idaho. The statute of Idaho is clearly a revenue statute, being a part of the revenue law of the state, and was enacted solely for the purpose of raising revenue, and does not, and its language will not, bear of an interpretation which in any way tends to prohibit doing the business of loaning money at interest without first having obtained the license. Section 1644 divides the amount to be paid for the license into five classes, depending upon the amount of business done. The amount of business done determines the amount of license money required to be paid clearly showing that the purpose of

the statute is to raise a revenue in proportion to the amount of business done, just as a person is taxed in proportion to his property, and not to make the business of loaning money at interest unlawful unless the license is first obtained. This conclusion is strengthened by the further fact that a license is good only for three months, when a new license must be obtained. . Suppose that a license was obtained under class 5 when it should have been obtained under class 1; the party obtaining the license would not have complied with section 1644, because he only paid thirty dollars, when subdivision 1 of that section required him to pay $100. If appellants' theory is correct, all acts done under this license are void because he did not pay all the license money the statute required, as a partial compliance with a statutory requirement is no compliance at all. Yet section 1638 recognizes the validity of the acts by the payment of the thirty dollars, and prescribes as the penalty a double payment for a license for the succeeding quarter. That which can be accomplished for a money consideration is not a privilege. Hence the quotations from Cooley on Taxation and Dillon on Municipal Corporations are not in point. We will now take up and cite, without quoting from them at length, cases which, after a careful examination, we think clearly applicable to the case at bar, and which distinguish it from cases of the classes cited by appellants. The court will notice that the following cases are under statutes similar in terms and having a similar object in view to the Idaho statute. The court will also observe that many of those cases are from the same state as some of those cited by appellants, and the courts do not cite or attempt to distinguish the cases, thereby clearly showing that the court did not consider the cases at all similar in principle. It will also be noticed that in some of the states from which cases are cited by appellants there is no penalty to the person attached to the violation of the statute. (*Mandlebaum v. Gregovich,* 17 Nev. 87, 45 Am. Rep. 433, 28 Pac. 121, 122; *Larned v. Andrews,* 106 Mass. 435, 8 Am. Rep. 346; *Chase's Pat. Elev. Co. v. Boston Tow-boat Co.,* 152 Mass. 428, 28 N. E. 300; *Bowditch v. New England Mut. Ins. Co.,* 141 Mass. 292, 55 Am. Rep. 474, 4 N. E. 798; *Union Nat. Bank v. Mathews,* 98 U. S. 621;

*Ehrman v. Insurance Co.,* 1 Fed. 471, and cases cited; *Pang-born v. Westlake,* 36 Iowa, 548; *Sherwood v. Alvis,* 83 Ala. 115, 3 Am. St. Rep. 695, 3 South. 307; *Buckman v. Bergholz,* 37 N. J. L. 437; *Corinne v. Abbott,* 54 N. H. 469; *Aiken v. Blaisdell,* 41 Vt. 655-666; *Insurance Co. v. McMillan,* 24 Ohio St. 67-79; *Mason v. Pitt* 21 Mo. 391; Thompson on Corporations, secs. 7955-7958; Morawetz on Private Corporations, 2d ed., sec. 665; 2 Beach on Corporations, sec. 415; Clark on Contracts, 385-388.) Whether or not the plaintiff has complied with the statutes of Idaho can be raised only by the state. (*Seymour v. Slide etc. Gold Mines,* 153 U. S. 523, 14 Sup. Ct. Rep. 847; *Fritts v. Palmer,* 132 U. S. 282, 10 Sup. Ct. Rep. 93; *Union Nat. Bank v. Mathews,* 98 U. S. 621; *Reynolds v. Crawfordsville Bank,* 112 U. S. 405, 5 Sup. Ct. Rep. 213; *Sherwood v. Alvis,* 83 Ala. 115, 3 Am. St. Rep. 695, 3 South, 307; *Chase's Pat. Elev. Co. v. Boston Tow-boat Co.,* 152 Mass. 428, 28 N. E. 300.)

QUARLES, J.—The plaintiff, a foreign corporation, brought suit to foreclose a certain real estate mortgage executed by the defendants, Ross Hoffman and his wife, Bell Hoffman, to secure to plaintiff four promissory notes dated November 1, 1892, for $700 each, payable November 1, 1897, with coupon notes for the annual interest on said respective notes attached thereto, said coupon notes being by their terms payable, each series, as follows, to wit: No. 1, payable January 1, 1893; No. 2, January 1, 1894; No. 3, January 1, 1895; No. 4, January 1, 1896; No. 5, January 1, 1897; and No. 6, November 1, 1897; and each of said coupon interest notes, by its terms, drawing interest from the maturity thereof. The defendants, Hoffman and wife, answered, raising only one question, the answer alleging as follows, to wit: "That at all times in the complaint mentioned the plaintiff was a corporation organized and created as such under the laws of the territory of Dakota, for the purpose of loaning money and other purposes; that at all said times said plaintiff was engaged in the occupation of loaning money at interest in the counties of Latah and Nez Perces, in the state of Idaho, and had a known, and its principal, place of business in Idaho at Moscow, in Latah county,

Idaho; that the consideration of the principal note and mortgage described in the complaint was a loan of money at interest; that said loan was made by said plaintiff in said Latah county, Idaho, while engaged in the business of loaning money at interest in said county, as aforesaid; that the plaintiff never at any time procured any license to engage in the occupation of loaning money at interest, either in Latah or Nez Perces county, Idaho, and never paid for any license to engage in any such occupation in either of said counties. By reason whereof plaintiff, in making said loan, and taking said note and mortgage, was violating the laws of the state of Idaho, and the same are null and void." To the said answer the plaintiff filed a general demurrer, which was sustained, and said defendants declined to further plead, but elected to stand on their said answer, whereupon the court rendered a judgment and decree of foreclosure in favor of plaintiff for the sum of $3,491.18 and the ordinary costs of the action in the sum of $17.95. The plaintiff, in the complaint, alleged that the defendants had paid all of said coupon interest notes numbered Nos. 1 and 2, but had failed and refused to pay the other coupon interest notes, and had refused and failed to pay said principal notes. It will thus be seen that the defendants had paid in interest the sum of $364 on said indebtedness. The demurrer to said answer admitted the facts pleaded in the answer, and those facts are to be regarded by this court as established.

The first question that arises is this: Was the transaction void, or is the plaintiff precluded from recovering on said contract by reason of its failure to procure a license to do the business of loaning money? Section 1636 of the Revised Statutes, provides: "A license must be procured immediately before the commencement of any business or occupation liable to a license tax from tax collector of the county where the applicant desires to transact the same, which license authorizes the party obtaining the same in his town, city, or particular locality in the ——— county to transact the business described in such license." Section 1644 of the Revised Statutes, requires "persons, associations, or corporations engaged in the occupation of banking, loaning money at interest," etc., to pay a license tax, the amount of such tax varying according to the classification enumerated in said section. Section 6983 of the

Revised Statutes. is in the following language, to wit: "Every person who commences or carries on any business, trade, or profession or calling for the transaction or carrying on of which a license is required by any law of this territory (state), without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor." The appellants contend that under the statutes, *supra,* the consideration for the notes and mortgage in question was illegal; that the respondent was prohibited from doing such business; that the contract of the parties was made in violation of law, and therefore void; that owing to the illegality of the consideration of said contract, the same having been made in violation of law, the court could grant no relief to the respondent. Counsel for appellants has spent much time in research, and has cited many authorities in support of his position. The general rule, as urged by appellants, that a contract founded on an act forbidden by a statute under a penalty is void, although it be not expressly declared to be so, is correct, and well established by authority. But in applying the rule many courts have excepted from its operation one class of cases, viz:, when the statutory prohibition is found in a statute enacted for the purpose of raising revenue or the regulation of traffic or business, when, unless it is manifestly the intention of the statute to make the contract void, the court will treat the contract as valid. Mr. Sutherland, in his admirable work on Statutory Construction, at section 366, in treating the question under consideration, very aptly says: "When a statute is for revenue purposes, or is a regulation of a traffic or business, and not to prohibit it altogether, whether a contract which violates the statute shall be treated as wholly void will depend on the intention expressed in the particular statute. Unless the contrary intention is manifest, the contract will be valid." And in support of the rule Mr. Sutherland, in a foot-note, cites many authorities among the following which support the text, as we have seen by a careful examination of the cases, to wit: *Harris v. Runnels,* 12 How. 79; *Insurance Co. v. Bledsoe,* 52 Ala. 538; *Niemeyer v. Wright,* 75 Va. 239, 40 Am. Rep. 720; *Johnson v. Hudson,* 11 East, 180; *Brown v. Duncan,* 10 Barn. & C. 93; *Parton v. Hervey,* 1 Gray, 119; *Bly v. Bank,* 79 Pa. St. 453; *Pangborn v. Westlake,* 36 Iowa, 546; *Bemis v. Becker,* 1 Kan. 226; *Lindsey v. Ruther-*

*ford,* 17 B. Mon. 245; *Strong v. Darling,* 9 Ohio, 201; *Watraus v. Blair,* 32 Iowa, 58; *Foster v. Railway Co.,* 13 Com. B. 200; *O'Hare v. Bank* 77 Pa. St. 96; *Vining v. Bricker,* 14 Ohio St. 331. The following are other authorities supporting the rule laid down by Mr. Sutherland, cited above, which we have examined, to wit: *Fackler v. Ford,* 24 How. 322; *Mandlebaum v. Gregovich,* 17 Nev. 87, 45 Am. Rep. 433; 28 Pac. 121; *La France Fire Engine Co. v. Town of Mt. Vernon,* 9 Wash. 142, 43 Am. St. Rep. 827, 37 Pac. 287, 38 Pac. 80; *Larned v. Andrews,* 106 Mass. 435, 8 Am. Rep. 346; *Bowditch v. Insurance Co.,* 141 Mass, 292, 55 Am. Rep. 474, 4 N. E. 798; *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67, 31 Pac. 327; *Edison General Electric Co. v. Canadian Pac. Nav. Co.,* 8 Wash. 370, 40 Am. St. Rep. 910, 36 Pac. 260; *Pac. Trust Co. v. Dorsey,* 72 Cal. 55, 12 Pac. 49; *Pacific T. Co. v. Dorsey* (Cal.), 13 Pac. 148; *Bank v. Matthews,* 98 U. S. 621; *Mill Co. v. Bartlett,* 3 N. Dak. 138, 54 N. W. 544; *Wright v. Lee,* 2 S. Dak. 596, 51 N. W. 706; *Lumber Co. v. Thomas,* 33 W. Va. 566, 25 Am. St. Rep. 925, 11 S. E. 37; *Dillon v. Allen,* 46 Iowa, 299, 26 Am. Rep. 145; *Pennypacker v. Insurance Co.,* 80 Iowa, 56, 20 Am. St. Rep. 395, 45 N. W. 408; *Ruckman v. Bergholz,* 37 N. J. L. 437; *Corning v. Abbott,* 54 N. H. 469; *Aiken v. Blaisdell,* 41 Vt. 655; *State Mut. Fire Ins. Assn. v. Brinkley Stave etc. Co.,* 61 Ark. 1, 54 Am. St. Rep. 191, 31 S. W. 157; *Rahter v. Bank,* 92 Pa. St. 393; *Insurance Co. v. McMillen,* 24 Ohio St. 67; *De Mers v. Daniels,* 39 Minn. 158, 39 N. W. 98; *Walter A. Wood etc. Co. v. Caldwell,* 54 Ind. 270, 23 Am. Rep. 641; *United States v. Marlin,* 94 U. S. 400. In *Lindsey v. Rutherford, supra,* the court said: "The dealing in bills of exchange, in view of the statute, is neither *malum in se* nor *malum prohibitum.* Contracts for their sale and purchase are not prohibited by the statute. They are neither evil in themselves nor evil because forbidden by the statute. The statute strikes no blow at the business itself, but simply declares upon this subject that, 'if any person shall carry on, conduct, or engage, directly or indirectly, in the business of a broker or exchange dealer, by the purchase of bills of exchange, etc., without a license besides the tax imposed, he shall forfeit and pay to the commonwealth $1,000.' The business may be carried on. The business itself is not prohibited. It is lawful to deal in bills

of exchange. But, if carried on without a license, the person doing so shall forfeit and pay to the commonwealth $1,000. We conclude, therefore, that our statute in this regard is essentially a revenue measure, designed to raise revenue from a business esteemed by the legislature as very profitable, and authorizing the requisition of a tax from him who thinks proper to engage in the business." In *Pangborn v. Westlake, supra,* the court said: "We are, therefore, brought to the true test, which is that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if from all these it is manifest that it was not intended to imply a prohibition, or to render the prohibited act void, the courts will so hold, and construe the statute accordingly." A statute in California made eight hours a legal day's work on public works, and required a stipulation to that effect to be incorporated in all contracts for public work. The supreme court of that state (*Babcock v. Goodrich,* 47 Cal. 488—where such stipulation had been, in violation of the statute, omitted) held the contract valid, and, among other things, said: "It is not made a consequence of an omission to insert this stipulation that the contract shall be void, and the omission, therefore, does not operate a forfeiture of the rights of the parties under the contract. If a county shall contract directly with the laborer, it will not be contended that the former may refuse to pay the latter his hire because he had worked too many hours, or had not, by express stipulation, limited the time which should constitute a day's work. The law was passed for the protection of the laborer. An officer of the county cannot refuse to carry out a contract because of an omission which renders the contract more favorable to the county." And in *United States v. Martin, supra,* the supreme court of the United States said, in a case similar to the one in California: "We regard the statute chiefly as in the nature of a direction from a principal to his agent that eight hours is deemed to be a proper length of time for a day's labor, and that his contract shall be based upon that theory. It is a matter between the principal and his agent, in which a third

party has no interest. . . . . We are of the opinion, therefore, that contracts fixing or giving a different length of time as the day's work are legal, and binding on the parties making them." In *Larned v. Andrews,* 106 Mass. 437, 8 Am. Rep. 346, the court said: "It is to be observed that the act does not expressly declare that sales by a wholesale dealer who neglects to pay the tax shall be illegal. The tax is not laid upon each sale, but upon the business or calling. The illegality does not attach to the sale, but consists in not paying the tax imposed upon the business. . . . . These and other considerations lead us to the conclusion that it was not the intention of Congress to prohibit and make unlawful each sale made by a wholesale dealer who neglects to pay his tax. The object of the tax was to provide internal revenue to support the government, and not to regulate domestic trade in the states. It imposes a tax upon wholesale dealers, and provides a penalty if they neglect to pay such tax. We think this was designed to operate upon the person, and not upon the business. If Congress had intended to subject the dealer neglecting to pay his tax to the additional liability of having all his sales rendered illegal, we think they would have so declared in unequivocal terms." The same line of reasoning was adopted by Judge Hawley in *Mandlebaum v. Gregovich, supra.*

From a careful study of all of the authorities, we think that the better class of authorities and the better reasoning leads to the conclusion that, where the prohibition is implied from a penalty imposed, as in the case at bar, the prohibition being for the protection of the public revenue, and no declaration in the statute making the prohibited act void, the doing of such act is not illegal. There is nothing in our statutes which makes it unlawful to loan money at interest. There is nothing in our statutes which says that it is unlawful to follow the business of loaning money at interest. Such business is not *malum in se,* nor is it *malum prohibitum.* Anyone may conduct the business, but, under our statute, if he does so, he must obtain the license; and if he carries on such business without paying the license tax and obtaining the license, he is guilty of a misdemeanor. The offense consists, not in doing the business, for that is not prohibited, but in failing to pay the license tax. The statute was passed, not to protect the public, not to

protect the borrower, nor to prevent the loaning of money at interest, but for the purpose of raising the revenue to be derived from the license taxes to be collected from those persons who should engage in the business of loaning money at interest. Section 6983 of our statutes, *supra*, was enacted to protect the public revenue, not for the purpose of making void any contract made in violation of it. Take the case at bar. The respondent loaned $2,800 to the appellants. The respondent was doing the business of loaning money at interest, in violation of law, without the license. This was a fraud upon the public revenue, but was no injury to the appellants. For such failure the legislature has said to respondent: "You are guilty of a misdemeanor. The assessor and collector may direct suit against you, and recover the license tax imposed by statute, together with twenty dollars damages." But the legislature has not further said that "you shall not recover back any money which you may loan at interest before paying such license tax." It is the duty of the court to construe all of our statutes which relate to the subject in question *in pari materia*, and ascertain what the intention of the legislature was as to the validity of the contract in question. A careful consideration of the said statutes, of the subject matter and object to be obtained, convinces us that it was not the intention of the legislature that a violation of section 6983, *supra*, should be attended with any penalty other than those prescribed by the statutes. If the act of loaning money at interest was injurious to morals or good society, or prohibited by law, we could not come to this conclusion. The legislature may, within the limits of the constitution, prescribe traffic regulations, and may impose upon a business a tax, and require persons intending to engage in such business to obtain, before doing so, a license; and we think the legislature might go one step further, and say that whoever should engage in any business upon which a license tax is imposed without first paying such license tax, should not only be fined and imprisoned, one or both, but that such person should not recover upon any contract made by him while engaged in such business without a license. But the legislature has not done so, nor has it shown any intention to attend such forfeiture upon a person violating the statute. Having specified the penalty for a violation of the statute, and further provided for

the collection of the license tax with damages, we are authorized to and do conclude that the legislature did not intend that any further punishment should be inflicted. This conclusion is strengthened by the well-known principle that forfeitures are not favored in law; nor does this court favor the idea of giving one's goods to another without compensation. We think that the respondent clearly has the right to recover back the money which it loaned to the appellants.

But another serious question arises in this case, which we will now consider. The interest coupon notes attached to each of the four principal notes, and numbered from 1 to 6 in the respective series, by their terms draw interest from their maturity. Section 1264-1266 of the Revised Statutes of Idaho, are as follows:

"Sec. 1264. Parties may agree in writing for the payment of any rate of interest on money due or to become due on any contract, not to exceed the sum of one and one-half per cent per month; any judgment rendered on such contract bears interest at the rate of ten per cent per annum until satisfied.

"Sec. 1265. Compound interest is not allowed, but a debtor may agree in writing to pay interest upon interest overdue at the date of such agreement.

"Sec. 1266. If it ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money or in property, such contract works a forfeiture of ten cents on the hundred by the year, and at that rate upon the amount of such contract, to the school fund of the county in which the suit is brought and the plaintiff must have judgment for the principal sum less all payments of principal or interest theretofore made and without interest or cost. The court must render judgment in said action for ten per cent per annum upon the entire principal in said contract, against the defendant in favor of the state for the use of the school fund of the county, whether the unlawful interest is contested or not; and in no case where unlawful interest is contracted for must the plaintiff have judgment for more than the principal sum less the payments already made, whether the unlawful interest be incorporated with the principal sum or not. But

no indorsee in due course of negotiable paper, is affected by any usury exacted by any former holder of such paper unless he has actual notice of the usury previous to his purchase; but in no such case the judgment above provided in favor of the school fund must be entered against the drawer or maker, if a party to the action, and he may recover back the usury paid from the party who received the same."

Section 1265, *supra,* limits the right of the parties to contract under section 1264, *supra,* and forbids the agreeing to pay compound interest, except in one case only, to wit, when interest is past due, a party may, in writing, agree to pay interest on such overdue interest. The appellants contend that the judgment in this case, which gave to respondent the amount of the principal notes, the amount of the unpaid interest coupon notes, with interest on the latter, was erroneous, and that the respondent is not entitled to recover on said mortgage indebtedness anything more than the original principal less all payments heretofore made in principal or interest, and we agree with the appellant in this particular. We are aware that the supreme court of the United States, in *Pana v. Bowler,* 107 U. S. 529, 2 Sup. Ct. Rep. 704, and in other cases, has held that the interest coupons of municipal bonds draw interest after maturity according to the law of the place where such coupons are, by their terms, payable. In Wisconsin it was repeatedly held that where, by the terms of an instrument, interest became due at certain specified times, compound interest was allowable upon each installment of interest after the maturity of such installment. And in Texas it was held in *Lewis v. Paschal,* 37 Tex. 315, that compound interest was allowable. In the latter case the rule was justified on the ground that it was not prohibited by the statutes of Texas. We apprehend that it will not be questioned but that the legislature can regulate the matter of interest, and may prohibit altogether compound interest. It is no answer to the statute in the case at bar to say that the compound interest provided for in the coupon notes when added to the simple interest falls below the legal and contractual rates provided by our statutes. When no rate is agreed upon, our statutes fix the rate, and at the time the contract in question was made, the legal rate was ten

per cent, and where the parties were not satisfied with this rate they could, by agreement in writing, fix any rate desired with these restrictions. They could not agree upon a rate higher than one and one-half per cent per month, or provide in advance for compound interest. The coupon notes in question were usurious, providing as they did for interest upon interest which was not overdue at the time they were made. It appears from the allegations of the complaint that the coupon notes Nos. 1 and 2 of each of the series, amounting in all, as we gather it from the complaint, to the sum of $364, were paid by appellants before this action was commenced. The respondent cannot be entitled under the statutes, *supra*, to judgment for more than the principal sum loaned by it to the appellants, less said interest payments, and without interest or costs, and to this extent only its mortgage security is good. The interest being forfeited under the statutes, *supra*, and the principal debt not due by the terms of the contract, no interest being past due, and the principal not yet due, the query suggests itself, Was not this suit prematurely brought? And an affirmative answer also suggests itself. Probably the appellants waive such question if they fail to raise it. It is the duty of the trial courts to see that the provisions of section 1266, *supra*, are carried out, and to inflict the penalty therein provided, without suggestion so to do from any source. The judgment is reversed, and the cause remanded for further proceeding consistent with this opinion. Costs of appeal awarded to appellants. Reversed and remanded.

Sullivan, C. J., and Huston, J., concur.

### ON REHEARING.

HUSTON, J.—We have had occasion heretofore to say that the proposition that the court in its consideration of a case has not been limited to the briefs or oral arguments in the case, will not be considered as a ground for rehearing. We are permitted, whenever we deem further argument, either written or oral, essential to the proper presentation of any question, to call for it; but this does not involve or include the right of counsel, whenever they think they have not said enough, to insist upon a rehearing. Although somewhat lengthy, we have,

in view of the importance of the case, and the fact that the questions involved are new in this jurisdiction, given the petition in this case a more than ordinary consideration. We find but two questions or contentions presented by the petition. The first is as to the interest coupons, and it is contended that they do not come within the prohibition of our statute. We cannot recognize the contention of petitioner in this regard. The statute is plain and unequivocal, and to permit its evasion through such a flimsy pretext as that presented in the petition in this case would be inexcusable at least. Counsel cite many authorities which he claims are definitive of what usury is. It is only necessary, in answer to them all, to say that what is usury within any state or jurisdiction is what the law of such state or jurisdiction declares to be such, and the courts thereof, in the administration of the law, must be governed thereby. The other contention of petitioner, that the notes which the mortgage sought to be foreclosed in this case were given to secure were made payable in the state of Vermont, and that, therefore, the contract must be construed by the laws of that state, is not only utterly untenable, but not one single authority of the multitude cited by counsel in his petition supports the contention. The proposition simply states this: A foreign corporation, having a resident agent in this state, engaged in the business of loaning money upon interest, may avoid the laws of this state in regard to such business, and especially in regard to usury, by simply making the evidences of indebtedness payable in some other state, where the laws against usury are less onerous. The monstrosity of the proposition is too apparent to require comment, and in support of it we have cited to us the following authorities: "A bill of exchange may even be drawn in another state to take advantage of a higher local rate of interest, and be governed by the law of such state; but, if a note is void for usury where made, it will be void everywhere, although it may have been made payable elsewhere as a cover for the usury." (1 Randolph on Commercial Paper, sec. 28.) Again: "Of course, the note being payable at the residence of the payee, and having been delivered there for goods sold there, must be deemed and taken to be a West Virginia contract." (*Tenant v. Tenant,* 110 Pa. St. 478, 1 Atl. 532.)   Again: "The

notes were made and payable in this state, and in determining their validity and effect they must be regarded as New Hampshire contracts." In *Bank v. Wood,* 142 Mass. 563, 8 N. E. 753, the note was executed in Kentucky, and made payable in Kentucky. The court said: "Under our decision, these various circumstances determine the place where the contract was executed, and where it was to be consummated. It was clearly a Kentucky contract, and is to be governed by the laws of that commonwealth." Without a single exception, the authorities cited in the petition are to this effect, and are all cases arising upon commercial paper and in transitory actions, and how they can be said to uphold the contention that a corporation in the state of Vermont can loan money upon mortgages upon land situated in Idaho, by and through an agent, necessarily a resident of Idaho, the debtor being a resident of Idaho, and the contract made in Idaho, and may, in attempting to enforce a claim only enforceable in Idaho, insist that the laws of Vermont shall be the rule of construction of such contract, when the corporation is organized in the state of North Dakota, simply because, for the palpable purpose of evading the usury laws of Idaho, the notes were in terms made payable in Vermont, is a proposition we cannot entertain. This being purely an action *in rem,* and the enforcement of the claim being only maintainable in Idaho, how can it be contended that the intention of the parties was that the laws of Vermont should obtain in the construction of the contract? The matter of usury is peculiarly statutory. It has no recognition in the common law, and the legislation in regard to it in the various states of the Union has been as diversified as the ever-conflicting interests of greed on the one hand, poverty on the other, have been dominant. As to the policy of usury laws in the abstract, it is not our province to discuss that subject. We are simply called upon to administer the law as we find it. It is no part of the duty of the court to make law by construction to suit a given case, or serve a persistent contention, backed though it may be by whatever influence predicated upon an assumed policy. Judge-made law is becoming daily more obnoxious to deserved criticism, and is pernicious in its tendency, as being destructive of the elementary principles of our government.

The very able and energetic efforts of counsel to do away with the plain and unambiguous provisions of the statute cannot avail. We have examined the statutes of, we think, all of the states upon the subject of usury and interest. We find but one state in which a similar statute to that of Idaho exists, and that is the state of Minnesota. Our statute would seem to have been taken almost literally from that of Minnesota, and we have been unable to find any decision from the supreme court of that state recognizing the construction contended for by the respondent. The rule of the statute is not novel. In *Van Benschooten v. Lawson,* 6 Johns. Ch. 313, 10 Am. Dec. 333, Chancellor Kent lays it down as a principle of equity that "compound interest is not allowed, unless on a special agreement in writing after the lawful interest has become due," and the learned chancellor declares it to be a "well-settled rule," citing Lord Manners, 1· Ball & B. 430; Lord Hardwicke in *Thornhill v. Evans,* 2 Atk. 330, note 1; and this principle has been recognized and maintained by various decisions of the court of last resort in New York. (*Mowry v. Bishop,* 5 Paige, 98; *Young v. Hill,* 67 N. Y. 162, 23 Am. Rep. 99, and cases there cited.) Our statute is but the recognition and embodiment of that principle, and for the courts to attempt to abnegate or abrogate it by construction would be an assumption as wicked as unwarrantable.

Counsel's contention that the several sections of a statute relating to one subject should be construed separately, and not *in pari materia,* not only is not supported by any authority, but is in conflict with the elementary rules of statutory construction. Section 1265 of the Revised Statutes declares in words, "Compound interest is not allowed, but a debtor may agree in writing to pay interest upon interest overdue at the date of such agreement." By section 1266 of the Revised Statutes, whenever it appears that unlawful interest has been contracted for, "whether the unlawful interest is contested or not," it is provided that "in no case where unlawful interest is contracted for must the plaintiff have judgment for more than the principal sum less the payments already made, whether the unlawful interest be incorporated with the principal sum or not." The contention of counsel that we should ignore the universally

recognized rules of construction for the purpose of evading the plain, unambiguous provisions of the statute has all the persistency of Bassanio's plea without the merit arising from the circumstances.

Since the filing of petition for a rehearing, appellant has applied for a restitution of premises under the provisions of section 4825 of the Revised Statutes. The appellant is entitled to restitution, and the district court is directed to issue an order to that effect, it appearing from the record that the premises have been sold under the decree of the district court, and have been purchased by plaintiff. Rehearing denied.

Sullivan, C. J., and Quarles, J., concur.