# CHARLESTOWN.

CONAWAY & SMITH *v.* SWEENEY *et al.*

Submitted June 12, 1884—Decided September 27, 1884.

1. A person owning lands may authorize another to make a contract for the sale thereof; and if a contract be made under such authority, the owner of the lands may be charged by virtue of the contract, provided there be a memorandum thereof in writing signed by the person authorized to make it.   (p. 649.)

2. The signing by the agent of his own name as agent is sufficient. The statute does not make it indispensable, that he should sign the name of the party to be charged therewith.   (p. 649.)

3. Such a contract is just as binding on the owner, as if he had made it himself, provided there was no fraud and collusion between the agent and vendee.   (p. 649.)

4. If a contract for the sale of real estate is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it, as it is for a court of law to give damages for a breach thereof.   (p. 649.)

5. Where there is no unfairness in the sale of land by private parties specific performance will not be denied for inadequacy of price alone, unless it be so grossly inadequate as to justify the presumption of fraud and collusion, and to justify this presumption the inadequacy must be so gross as to shock the conscience and confound the judgment.   Half the estimated value of the land is not such inadequacy.   (p. 650.)

6. Inadequacy of consideration when combined with fraud, misrepresentation, studied suppression of the true value of the property or any circumstances of oppression is a material ingredient in the case affecting the discretion of the court in granting or refusing a specific performance.   (p. 651.)

7. The recordation of a contract in writing for the sale of real estate is sufficient notice to a subsequent purchaser of the same land from the vendor.   (p. 651.)

JOHNSON, PRESIDENT, furnishes the following statement of the case :

This is a suit in chancery to compel the specific performance by a principal of a contract for the sale of real estate made by his agent.   The plaintiffs, Charles I. Conaway and Thomas Smith, filed their bill in the circuit court of Tyler

county in October, 1880, in which they alleged that they purchased from the defendant, James Sweeney, through his agent, Stealey, who was in writing duly authorized to make such sale, a certain tract of land in said county, which by survey afterward made measured one hundred and eighty acres and one hundred and fifty-three poles, at the price of six dollars per acre, and that they were to pay for the same as follows: one third of the purchase-money on the first day of April, 1881, one third thereof on the first day of April, 1882, and the residue thereof on the first day of April, 1883, with interest on the last two instalments from the first day of April, 1881. Said contract bound said Sweeney to survey said land, which in the contract was definitely described by natural boundaries, and to execute to the plaintiffs a deed of general warranty therefor as soon as practicable. The contract is filed with the bill. The bill further alleged that said land was surveyed by said agent, and they executed and delivered to said agent their bonds for the purchase-money and said agent put them in possession of said land; that said Sweeney refuses to execute said contract and repudiates the same. They pray a specific execution of the said contract and for general relief.

This original bill was demurred to by defendant Sweeney and the demurrer was overruled.

In October, 1881, the plaintiffs filed an amended bill, repeating the allegations and charges of the original bill, and further representing that they had tendered to the defendant, Sweeney, the full amount of the purchase-money due, yet he had refused to execute the deed required by his contract; that on the 2d day of June, 1880, said contract duly acknowledged by all the parties thereto was admitted to record and recorded in the records of deeds of said county of Tyler; that the price agreed to be paid for said land was all it was reasonably worth and is as much as it was ever valued at by said Sweeney, until this controversy arose between him and the plaintiffs; that after the said article of agreement was made, and after this suit was instituted, to-wit, on the 16th day of April, 1881, the said Sweeney conveyed the entire tract containing about three hundred acres and including that purchased by plaintiffs to David N. Furbee and

others naming them, for a pretended consideration of two thousand nine hundred and twenty dollars, which deed was admitted to record on the 25th day of April, 1881. The deed is exhibited with the bill. The amended bill charges, that said deed was made without consideration, and that the grantees therein had both actual and constructive notice of the sale of a part of said land to the plaintiffs. The bill makes the grantees in said deed defendants and prays for the same relief as in the original bill and that said deed shall be declared void as to the land sold to them.

The defendant, Sweeney, answered the bill, in which he admits the receipt of a letter from Stealey to the effect that he could sell a certain portion of respondent's land, without giving the name of the party to whom he could sell it. He alleges that he was not acquainted with the value of lands in Tyler county, and having great confidence in the honesty and integrity of said Stealey, and believing at the time, that said Stealey would not do respondent any injustice, felt disposed at the time to trust the judgment of the said Stealey, and so wrote him in reply to his letter to respondent. At the time he wrote him, he thought the price of the land was low, and it was not until he found out that Stealey had sold, as he claimed, the land to his son-in-law, Charles I. Conaway, that respondent concluded that he would make some investigation before ratifying the sale; that he found the price of the land was greatly below its true value, and became satisfied and so charges, that there was collusion between the said Conaway and Stealey for the purpose of cheating and defrauding respondent in the price of the land sold; that the pretense set out by the amended bill, that the purchase was for Charles I. Conaway and Thomas Smith, was simply for the purpose of covering up the fraud or concealing the same by making it appear that the purchase was by others besides the said son-in-law. Respondent alleges, that the said Stealey and Conaway knew that the land was worth a great deal more money than the price fixed upon it by said Stealey, and that at the time of the pretended purchase of the land by Conaway and Smith, they knew that it could at that time be sold for more money; that said Stealey at the time was selling his own adjoining land of much inferior quality to

that of respondent for eight dollars per acre, all of which was well known to said Stealey and the plaintiffs. Respondent alleges that said Stealey and Conaway purposely kept from respondent knowledge of the fact that Conaway was to be the purchaser of the land, in order to allay any suspicions respondent might have had, that all was not right, and to prevent any enquiry until they could complete their purpose to obtain title to said land at a grossly inadequate price, and by this kind of trick, cheat and defraud respondent. Respondent avers that there was not at the time of said sale the slightest difficulty in selling said land at eight dollars per acre, which was well known to said Stealey and the plaintiffs. There were men among Stealey's neighbors who were ready to buy it at that price. Respondent had no trouble to sell at that price, which he has done. Respondent denies that said sale was not *bona fide*. A part of *the purchase-money* has been paid, and the rest amply secured by the grantees. Respondent sold the land at a small price because he was selling it to his nephews. Respondent denies that the said Stealey was his agent, or could in the case stated by plaintiffs, bind respondent by a written obligation to convey said land without submitting the same to respondent for his ratification or rejection, alleging that it was not so intended by respondent, and ought not to be so construed.

David N. Furbee and his co-grantors answered the bill denying that they had *actual* notice of the sale to Conaway and Smith. The deed from Sweeney to David N. Furbee and others is exhibited with the amended bill and acknowledges the receipt of the whole purchase-money, and of course no lien is retained to secure the payment of any purchase-money. There is no proof in the cause as to how much was paid by them or how any of it was secured to be paid. The contract from Stealey as agent of James Sweeney to the plaintiffs is signed "William Stealey, agent of James Sweeney," and by Charles I. Conaway and Thomas Smith. Seals are also attached to the paper.

The letters showing the power to sell the land are as follows:

"Centreville, Tyler Co., W. Va., April 30, 1880.

" *Mr. James Sweeney:*

"I am offered six dollars per acre for some more of your

land, and I will give you the boundary they want: Begin-
ning at or near the old cabin, and up to the mouth of Ugly
Hollow, and then up Ugly Hollow to the line, and with the
line to the mouth of Sam Underwood's lane, and with the
ridge road to the place where the big trough was got out, or
near there, and then down the run to the old cabin. This
boundary will be from one hundred and fifty to two hundred
acres. They will pay you all in three payments, the first
payment in April, 1881, interest from the first of April,
1881, until paid, and the man wants to know at once
if you can take the price, as he has other land in view. The
man is good and you will get your money when due. I do
not know what you think the land is worth, but I think it a
good price for the boundary. It will leave all your land
together in a body—the balance, as Underwood will take the
boundary I gave you at six dollars per acre and will pay you
some money this fall. Dan has been away from home and
John Duty is sick. We will have to wait until Dan comes
home to have the land run off to Underwood. All well.
Let me hear from you at once.

"Yours,

"WILLIAM STEALEY."

James Sweeney answered this letter, not dating his
answer, as follows :

"DUBLIN, FRANKLIN Co., O.

"*Mr. Wm. Stealey :*

"SIR:—Yours of the 30th is at hand, and in reply I will
say as for the worth of lands in your county I do not know,
and expect to be governed entirely by your judgment in
prices of my lands and boundaries. You being satisfied
with boundary and price, parties being good for pay, you
can make contracts—the same will be acknowledged by me.
When you are surveying the boundary to Underwood, you
may survey your last described boundary also. We are all
enjoying reasonable health at present.

"Yours truly,

"JAMES SWEENEY."

Sweeney also on March 16, 1880, wrote to Stealey about
the land Underwood desired to purchase. It is in answer

to one Stealey had written on the same subject and is as follows:

"DUBLIN, FRANKLIN Co., O., March 16, 1880.

" *Wm. Stealey* :

"DEAR SIR:—Yours of February is at hand, and contents carefully read. In reply I will say that I do not know the prices of land in your county, but will be governed by your judgment. If you will look over the land and say whether it is worth more than five dollars per acre or not, if you find that five dollars per acre is not enough for the land you will set the price; but whatever agreement you make with Underwood, it will be acknowledged by me.

"Yours truly,

"JAMES SWEENEY."

Depositions were taken on both sides. The plaintiffs' witnesses, three in number, considered the price a fair one for the land. A larger number, some eight or ten, thought the land worth eight dollars per acre, and one very precise witness fixed its value at eleven dollars and fifty cents per acre. There was no evidence showing any fraud and collusion between the agent Stealey and the vendees, one of whom was Stealey's son-in-law. The whole record shows that Stealey acted fairly and conscientiously in the matter; and the defendant Sweeney says in his deposition that his reason for refusing to perform the contract was the fact that the price, for which the land was sold, was grossly inadequate. He admits writing the letters.

The cause was heard upon the pleadings and proof, there being general replication to the answers of Sweeney and the Furbees and others; and the court upon the hearing dismissed the plaintiffs' bill with costs. From this decree the plaintiffs appealed.

*J. N. McKnight* and *D. F. Pugh* for appellant.

*C. J. Stuart* for appellees.

JOHNSON PRESIDENT:

Is this a case in which the contract made by the agent by the authority of the principal should be specifically performed? A person owning land may by parol authorize

another to make a contract for the sale thereof; and if a contract be made under such authority, the owner of the land may be charged by virtue of the contract, provided there be a memorandum thereof in writing signed by the person authorized to make it. The signing by the agent of his own name is sufficient. The statute does not make it indispensable, that he should sign the name of the party to be charged therewith. *Yerby* v. *Grigsby*, 9 Leigh 387. In that case, Parker, J., in delivering the opinion of the court said: "If this were a case of first impression, and we had now in the absence of authority to decide upon the true meaning of the statute of frauds in relation to contracts for the sale of lands I should be much inclined to say, that a specific execution of this contract ought not to be decreed. But our Legislature has copied the provisions of the English statute of 29 Charles II. chapter 3 almost *verbatim*; and our courts have generally adopted the construction given of that statute in *Westminister Hall.*"

It is too well settled now to be shaken, that such a contract, as the court in this case was asked to enforce, is under the operation of the statute of frauds just as binding on the owner of the land, as if he had made it himself, provided there was no fraud in its procurement. But it is said, that the specific performance of a contract is a matter resting in the sound discretion of the court, and that under the circumstances of this case it ought not to be enforced. It is true, that the specific performance of contracts in a general sense is not a matter of right in either party but a matter of discretion in the court, not indeed of arbitrary or capricious discretion dependent on the mere pleasure of the judge, but of that sound and reasonable discretion which governs itself, as far as it may, by general rules and principles, but at the same time withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties. But where a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it, as it is for a court of law to give damages for the breach of it. This proposition is self-evident. The law always

enforces the contracts of men where they are unobjectionable. (*Abbott* v. *L'Hommedien*, 10 W. Va. 677, and Judge Moncure in *Hale* v. *Wilkinson*, 21 Gratt. 80.)

But it is said, that this contract is not unobjectionable, because the land was sold for a grossly inadequate consideration. Upon the evidence in this case, considering the character of it, the inexperience of the witnesses and all the circumstances of the case, it may be doubted, whether the land sold for much below its value. Certainly it can not be pretended, that the price was so grossly inadequate as to furnish presumptive evidence of fraud. Inadequacy of consideration is not of itself a distinctive principle of relief in equity. The common-law knows no such principle. The consideration, be it more or less, supports the contract: Common sense knows no such principle. The value of a thing is what it will sell for, and it admits of no precise standard. It must be in its nature fluctuating and will depend upon many different circumstances. One man in the disposal of his property may sell it for less than another would. He may sell it under a pressure of circumstances, which may induce him to part with it at a particular time. If courts of equity should undertake to unravel all these transactions, they would throw everything into confusion and set afloat the contracts of mankind. 1 Sto. Eq. Jur. sec. 245. Evidently the witnesses did not understand all the circumstances of the case. They did not know except in a general way the value of the land in controversy, or its value as compared with other tracts of land. Ten acres of very poor land thrown into a tract of forty acres of good land would bring down very materially the average value of the whole. How much poor land there was in the land in controversy no witness knows. But, be its true value what it may, it is very clear that no ground is shown for refusing specific performance on account of inadequacy of price. If there was no unfairness in the sale, it cannot be set aside for inadequacy of price alone, unless it be so grossly inadequate as to justify the presumption of fraud and collusion; and to justify this presumption the inadequacy must be so gross as to shock the conscience and confound the judgment of any man of common sense. Half the estimated value of such land is not such

inadequacy. (*Bradford* v. *McConihay*, 15 W. Va. 732.) Giving equal and full credit to all the witnesses, the price here was more than three fourths of the value agreed to be paid.

But it is said that there was fraud and collusion between the agent and the purchaser, which should prevent the enforcement of the contract. Inadequacy of consideration when combined with fraud, misrepresentation, studied suppression of the true value of the property or any circumstances of oppression is a material ingredient in the case affecting the discretion of the court in granting or refusing a specific performance. (Fry on Spec. Pr. sec. 277.) There is no proof of fraud in the record on the part of the vendees, nor is there any proof of fraud and collusion between the agent and the vendees. Stealey, the agent, seems from the whole evidence to have acted fairly, honestly and conscientiously. There is nothing in the charge that he suppressed the name of one of the purchasers, because he was his son-in-law. He did not pretend to make the contract under his general power to sell, but wrote to his principal the offer he had, the price and the boundary that was to be taken; and the reply was, "as for worth of lands in your county I do not know, and expect to be governed entirely by your judgment in prices of my lands and boundaries. You being satisfied with boundary and price, parties being good for pay, you can make contracts. The same will be acknowledged by me." There is not the slightest evidence, that the agent fixed the price one cent lower, because one of the purchasers was his son-in-law. The evidence shows, that he absolutely refused to let his son-in-law have the boundary he wanted, because it would injure the sale of the residue of the land. The price was the same per acre as that fixed by him on a part of the same survey sold to Underwood, and another portion sold to Furbee. There is nothing in the record to fix fraud on the agent, in which the vendees participated, or any fraud by either agent or vendees.

The defendants, grantees in the deed from Sweeney to them of the land in controversy, are not innocent purchasers. They had constructive notice of the sale to Conaway and Smith by the recordation of the contract in writing, by which

the sale was made; and this was sufficient notice.    (§ 4 ch. 74 of Code.)

The decree of the circuit court of Tyler county rendered in this cause on December 21, 1882, is reversed with costs to the appellants against the appellee, James Sweeney; and the deed from James Sweeney and wife executed on April 16, 1881, conveying to the grantees therein named, David N. Furbee and others, which deed was admitted to record in the clerk's office of the county court of Tyler county, on April 25, 1881, which deed conveys to the grantees three hundred and sixty-five acres, more or less, and includes the land sold by James Sweeney through his agent, William Stealey, to the plaintiffs on May 12, 1880, so far as it conveys to the said grantees the said land previously sold to the plaintiffs, is declared void; and this cause is remanded to the circuit court of Tyler county with instructions to decree a specific performance of the said contract of May 12, 1880, made and entered into by William Stealey, agent of said Sweeney, and the plaintiffs in this suit.

REVERSED.    REMANDED.