# CHARLESTON.

## OBER *v.* STEPHENS.

Submitted June 16, 1903—Decided December 5, 1903.

1. LICENSE.

The general rule is that a contract in violation of law is void; but where the statute requires a license "to practice the business of stock or other broker, by buying or selling for others, stocks, securities or other property for a commission or reward" and imposes a penalty for a violation thereof, a contract of real estate agent to sell real estate for another for commission or reward in violation of such requirement is not for that reason absolutely void. (p. 360).

2. LICENSE.

Unless it clearly appear that the legislature intended more it will be held that the penalty exposed excludes all others. (p. 360).

3. SYLLABUS APPROVED.

*Kennedy* v. *Ehlen*, 31 W. Va. 540 (syl. point 3), approved and reaffirmed. (p. 363).

Error to Circuit Court, Wetzel County.

Action by M. V. Ober against John Stephens. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

CORNETT & NEWMAN and E. B. SNODGRASS, for plaintiff in error.

E. L. ROBINSON, for defendant in error.

McWHORTER, PRESIDENT:

M. V. Ober brought his action before a justice of the peace of

Wetzel county against John Stephens, to recover "Amount due for sale of real estate according to contract $250," and recovered judgment for the amount claimed. Stephens appealed from the judgment of the circuit court of Wetzel county. When the case was called the defendant tendered two pleas in writing numbered one and two. The first was a plea of *non-assumpsit,* the second was to the effect that at the time plaintiff alleged that defendant employed him as an agent to sell for him defendant's farm, for the commission claimed, and at the time the sale was made by plaintiff as real estate agent or broker and as alleged agent for defendant that plaintiff was a real estate broker and practiced the business of such broker by buying and selling for others, real estate for commission and reward, and was also on both of the said occasions without a state license therefor, and was at the said time a citizen of the state of West Virginia, and county of Wetzel, which plea was verified by the affidavit of the defendant. The plaintiff objected to the filing of said plea, No. 2, which objection was sustained by the court, the court being of opinion that the matter set up in said plea marked No. 2 could be given in evidence under the general issue. The defendant excepted to the ruling of the court in rejecting the plea. A jury was empanneled to try the issue of the first plea, and in the course of the trial the defendant took several bills of exceptions. The defendant asked the court to give to the jury five several instructions. Numbers 1 & 2 were given, the first was to the effect that the burden of proof was on the plaintiff; that he could not recover unless it be shown by a preponderance of evidence that plaintiff made the contract sued on, as alleged by plaintiff, and the second, that even if they believed from the evidence that defendant authorized plaintiff to sell his farm as agent, still plaintiff could not recover if the jury further believed from the evidence that all the terms or any of the material terms of the sale were omitted and not agreed upon by the parties. The third, fourth and fifth instructions asked by the defendant were as follows:

"3. The court instructs the jury that no person without a State license shall practice the business of a real estate broker by buying or selling real estate for others, for profit or reward; and if you believe from all the evidence that the plaintiff was a real estate broker, without State license, at the time he claimed

to have sold defendant's farm, or at the time that he claimed to have been authorized by defendant to sell his farm, for $250.00 for his services in making such sale, you will find for the defendant.

"4.   The court instructs the jury that a real estate broker is one who buys or sells real estate for others, for profit or reward; and that a real estate agent who buys or sells land for others for profit or reward, is a real estate broker.

"5.   The jury are instructed to find for the defendant."

Which instructions the court refused to give and gave the following instruction:

"The jury are instructed that if you believe from all the evidence and circumstances that the defendant, John Stephens, employed M. V. Ober to sell his farm at the price of twenty-five thousand dollars, and the plaintiff, M. V. Ober, did sell said Stephens farm at the price and upon the terms agreed upon in said contract of employment and if you further find from all the evidence and circumstances of the same, that said Stephens was to pay said Ober two hundred and fifty dollars for making said sale, then you should find for the plaintiff" for the plaintiff, over the objection of the defendant. To the ruling of the court in refusing to give said three instructions for the defendant, and in overruling the defendant's objection to the said instruction given for the plaintiff the defendant excepted.

On the 27th day of May, 1902, the jury found for the plaintiff and assessed his damages at $250. The defendant moved to set aside the verdict because it was contrary to the law and the evidence and grant him a new trial, of which motion the court took time to consider, and on the 14th day of June, 1902, the court set aside the motion and entered a judgment in favor of plaintiff, upon said verdict against the defendant John Stephens and John C. McEldowney, his security on the appeal bond. The defendant procured from one of the Judges of this Court a writ of error, assigning several errors.

The first and third assignments of error raise the question of the validity of the contract sued upon, by reason of the plaintiff practicing the business of real estate agent in buying and selling property for others for a commission or reward, without having a State license therefor, as provided in chapter 32, Code. It is contended by plaintiff in error that for the cause stated

plaintiff Ober's contract is void, being in violation of law, and could not be enforced.

The first assignment is that the court erred in not permitting plea No. 2 to be filed. Under the ruling of the court admitting all the evidence under the general issue that could have been introduced by the defendant under the plea this was immaterial.

The third assignment of error is in refusing to instruct the jury as set out in bill of exceptions No. 4, refusing the instructions of the defendant numbers 3, 4 and 5, hereinbefore copied. The authorities touching the validity of the act are conflicting. Many of those without this state holding in favor of the proposition of defendant, that the contract of plaintiff is void, being in violation of the statute which forbids any person "to practice the business of stock or other broker, by buying or selling for others, stocks, securities or other property for a commission or reward" without a license therefor. In *Stevenson* v. *Ewing*, 87 Tenn. 46, it is held that: "Real estate brokers are forbidden by acts of 1885, chapter 1, section 46, to pursue their avocation without license; and an unlicensed broker, who, in violation of this act, negotiates the sale of land for another cannot recover any compensation for his services. The contract for compensation in such case is illegal and void." The section referred to provides that the ocupation of real estate broker "Shall be deemed a privilege and and be taxed and not pursued or done without license." Much stress seems to have been laid in the opinion in that case, upon the words of the statute "not pursued or done without license." This decision quotes with approval from Cooley on taxation (2d ed.) p. 572: "When a tax takes the form of a tax on the privilege of following an employment, convenience in collection will commonly dictate the requirement of a license, and the person taxed will be compelled to pay the tax as a condition to the right to carry on the business at all. In such case the business carried on without a license will be illegal, and no recovery can be had upon contracts made in the course of it;" and cites *Johnson* v. *Hulings*, 103 Pa. St. 498; 49 Am. Rep., 131, where it is held: "An unlicensed real estate agent subject to penalty for doing business without a license cannot recover compensation under a contract for such business," and also *Holt* v. *Greene*, 73 Pa. St. 198; 13 Am. Rep. 737, where it is held: "A commission broker who has not procured a license as required

by the act of Congress of June 30, 1864, held not entitled to recover his commission in a state court." See also *Buckley* v. *Humeson,* 50 Minn. 195; 36 Am. St. R. 637 and many other authorities to the same effect. The only West Virginia case relied upon by the plaintiff in error on this point is the case of *Jackson* v. *Hough,* 38 W. Va. 236. This question was not there passed upon as it did not clearly arise. While that was an action similar in its nature to the one at bar the plaintiff Jackson, was asked as a witness the question "whether he had license to engage in the business of real estate agent or broker;" the defendant insisting that the court erred in refusing this question to be asked. It is there said that it was not error in' as much as no evidence had been given or was proposed to show that plaintiff carried on the business of real estate broker, save the single·sale in question. It is said in the opinion, at page 241, "If one should undertake or profess to follow that business, no doubt one sale would be sufficient to bring him within the letter and spirit of the statute; but one is not within its letter or spirit who, without any manifestation of carrying on such vocation merely makes one sale." There is but a mere inference to be drawn from the langugage here used, that in case it had been shown that Jackson was a real estate broker and without a license, the court might have held that he could not recover for his services as such. There are many authorities without this state holding that such contract is not void, notably *Ruckman* v. *Bergholz,* 37 N. J. 437; *Fairly* v. *Wappoo Mills,* (S. C.), 29 L. R. A. 215; *Mandlebaum* v. *Gregavich,* 17 Nev. 87; 45 Am. Rep. 433; *Trust Co.* v. *Hoffman,* (Ida.) 37 L. R. A. 509; *Lester* v. *Bank,* 33 Md. 558. These decisions are based upon the theory that the object of the law in such cases requiring a license and imposing a penalty for carrying on business which is legitimate and proper in itself, is to raise revenue and the penalty provided for carrying on the business stated without a license is exclusive, and not intended as prohibitory. In Clark on Contracts, Hornbook series, at page 388, in treating the subject, the author says: "Sir William Anson states as the tests of prohibition, not only the purpose of the penalty, but also its continuity. His summary is substantially that, where a penalty is imposed by statute upon the carrying on a trade or business in a particular manner, it may be assumed *prima facie* that agreements made in breach

of such statutory provisions are illegal and void; that if the penalty is imposed not for the benefit of the public in general but for the security of the revenue, it is possible that the agreement was only intended to be penalized and not prohibited; that if, in addition to this, it appears that the penalty is imposed once for all upon the offending person, and not upon each successive agreement in breach of the statute continuously, it is almost if not quite certain that agreements so made are not intended to be vitiated." And cases there cited. However it seems to me this point is well settled by this Court in the case of *Tie and Lumber Company* v. *Thomas*, 33 W. Va. 566, (syl. pt. 2): "A contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business in another state will not, on that account, be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others." In that case at page 570 JUDGE SNYDER, after saying that it is clearly not the primary purpose of the legislature in passing such statutes, to render the contracts and dealings of such corporations which have not complied with the requirements of the statutes, void and unenforceable, says: "Hence the decided weight of authority is that, where the legislature has not expressly declared that this result shall follow from a failure to comply with the statute, the courts ought not to imply such a result unless this be necessary in order to attain the primary object for which the statute was enacted. Upon this ground it has been held that a contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business will not, on that account, be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failure to comply with such prerequisites, such penalty will be deemed exclusive of any others;" and cities *Columbus Ins. Co.* v. *Walsh*, 18 Mo. 229; *Ins. Co.* v. *Salt Co.*, 31 Mich. 346; *Hartford & Co.* v. *Mathews*, 102 Mass. 221; 2 Marowetz on Corp. section 665. Section 30, chapter 54, Code provides, *first,* that a foreign corporation may do business in this state "upon complying with the requirements of this section, *and not otherwise;*" then a specific penalty upon such corporation for its failure to comply with such require-

ments. There is no express declaration nor apparent intention on the part of the law makers that such failure to comply with the requirements of the statute should render the contracts of the corporation void, but they do expressly provide that such failure shall be punishable by fine, and the provision in regard to a person practicing the business of broker etc. is analagous to the case of the corporation. In the case just cited, *Tie Co.* v. *Thomas,* JUDGE SNYDER cites with approval *Bank* v. *Page,* 6 Ore. 431 where it is held: "The general rule is that a contract in violation of law is void. The only exception to the rule is that when a law imposes a penalty for the prohibited act, and it clearly appears that the legislature intended no more than to impose the penalty for the violation of the law, a contract made in violation of the statute is not void." He further says: "The authorities on this question are reviewed in Mor. on Corp. section 662-666, and that author announces as his conclusion therefrom that, 'unless it appear affirmatively that the legislature intended to render the forbidden act or contract absolutely void in legal contemplation it will not be so held'; citing *Bank* v. *Mathews* 98 U. S. 621-627." It follows that the court did not err in refusing to give the instructions Nos. 3, 4, and 5, as set out in bill of exceptions No. 4.

The second assignment is that the court erred in permitting to be introduced as evidence before the jury on behalf of the plaintiff, the paper writing marked exhibit 3, with plaintiff Ober's testimony, purporting to be a contract or agreement between the said M. V. Ober, agent for John Stephens and A. C. Ruby, for the sale of the farm to said Ruby, which is set out in bill of exceptions No. 6, and is as follows: "This agreement, made this 19th day of September, 1901, between M. V. Ober, agent for John Stephens, of the first part, and A. C. Ruby, party of the second part, witnesseth, that the said Ober, agent of John Stephens, has this day sold to A. C. Ruby the farm of said John Stephens, lying in Magnolia District, Wetzel County, West Virginia, being the same land purchased by John Stephens from Robert D. Leggett and D. M. Alexander, and also including a small piece of land owned by said Stephens in said District, containing 620 acres more or less, and the said Ruby agrees to pay the sum of $25,000.00 cash for said lands upon the execution and delivery of a good and sufficient deed for the same. And the said

Ruby agrees to pay, upon the execution of a contract for said
sale, the sum of $500; the remainder to be paid when the said
deed is to be delivered. M. V. Ober, Agent for John Stephens.
A. C. Ruby."

Plaintiff testified that on the 16th day of September, 1901,
he had a verbal contract with the defendant to sell his farm
for him at $25,000.00 for which he was to pay him $250. It
does not appear from his testimony that it was agreed just what
the terms of sale should be. He says he spoke to L. M. Stephens
informing him that he had John Stephens' form for sale at
$25,000.00 when Stephens remarked he had a man who would
take it at that. He said John Stephens told him to go ahead and
sell the farm for $25,000.00 and he would give him $250, and
that Stephens mentioned something about his tenants, and that
plaintiff told him they would be taken care of; that the contract
to sell the land first started on Sepember 16, and that Stephens
told him after that, about Wednesday following—he thinks about
the 18th—he told him again. He was asked how long after that
it was until he sold the land to Ruby. He said he con-
sidered it sold then through Mr. L. M. Stephens and as soon
as Mr. Stephens came to town and Ruby was there he said
they would get them together and fix things up; that
he met John Stephens and told him to bring the deed
down; that Mr. Ruby came to witness' office and he went
over to the Eakin House and to Mr. Stephens over
there and said, "Now Uncle John I have sold that farm
to Mr. A. C. Ruby here, he will pay you all cash or part
cash." And Ruby said "If I don't pay all cash I don't want no
lien retained on the land; I want the land clear; I would rather
give personal security;" and Ruby said, "Yes sir, I will pay you
all cash or part cash," and Mr. Stephens said, "Well all cash will
be acceptable." Witnes further said that Stephens called L. M.
Stephens out and told him that he wanted to see him; that wit-
ness did not know what their conversation was about. John
Stephens did not return, but L. M. Stephens returned and told
witness what was said and witness told Ruby, "just let it rest,
then." John Stephens testified that he told L. M. Stephens
that it looked to him as if Mr. Ober wanted to force him to sell
his land whether he was willing to or not, and that he said,
"I wouldn't let him sell anything for me now; since he has

. tried to force this thing, he couldn't sell a dog for me." This is given as the conversation between John and L. M. Stephens when John called him out and which was told to plaintiff by L. M. Stephens, who was associated with Ober in the transaction as stated by Ober. On plaintiff's cross examination defendant offered a paper which was admitted to be a copy of a writing or power of attorney, which plaintiff presented to defendant and asked him to sign, which defendant declined to do, which is filed with and made a part of the deposition of plaintiff at instance of defendant, and which is as follows: "New Martinsville, W. Va. Sept. 18th, 1901. ˙I hereby put my farm, consisting of six hundered and twenty acres more or less, situated and lying in Magnolia District, Wetzel County, West Virginia, and being the same land purchased by me from R. D. Leggett and D. M. Alexander, in the hands of M. V. Ober, for sale; and I hereby agree to pay the said M. V. Ober Three Hundred dollars if he succeeds in finding a purchaser or purchasers within thirty days from the date hereof, at the price of Twenty-Five Thousand Dollars ($25,000.00.) One-third of the purchase money to be paid cash in hand, the balance to be paid on such terms as the purchaser or purchasers and I can agree on, and I hereby agree to make a deed for said land to the purchaser or purchasers, whoever they may be, on the terms mentioned above."

The contract or agreement mentioned and set out in bill of exceptions No. 6, admitted as evidence was entered into between the plaintiff and Ruby the alleged purchaser without the knowledge of defendant. Plaintiff testified that the contract was written some four or five days, or possibly a week after the plaintiff, defendant and Ruby were together, and it was dated back to that day and that defendant was not present when it was written, and it is not claimed that defendant knew anything about the written contract. It will be observed there is no mention made in the written contract of taking care of any tenants who might be on the land as was understood between the plaintiff and defendant as shown by the testimony of plaintiff himself, as well as other witnesses. In *Chapman* v. *Jewelt,* 24 S. E. 361, the court of appeals of Virginia holds that "verbal authority to sell land confers no power to execute a contract to convey" and in *Halsey* v. *Monteiro,* same volume, 258, by the

same court, it is held: "A real estate broker authorized to 'list' and 'place' property on commission has no authority to sign a contract of sale." While the plaintiff testifies that the sale was made before that time, on the 18th day óf September he presented a written contract to be signed by Stephens authorizing him to sell the land on different terms from those in which the alleged sale was made, which Stephens refused to sign. Plaintiff afterwards on the 19th of September executed the contract with Ruby thereby manufacturing evidence for himself. The contract in question being executed without the authority, verbal or written, and without the knowledge or consent of Stephens, in my view of the case was not competent evidence and should not have been permitted to go to the jury. Aside from this written contract the evidence was conflicting and it was for the jury to say whether the claim of plaintiff was sustained, and the admission of the written contract was prejudical to the rights of the defendant, but a majority of the members of the Court differ with me on this, and hold that under the rulings in *Conway* v. *Sweeney*, 24 W. Va. 643; *Kennedy* v. *Ehlen*, 31 W. Va. 540-558, and cases there cited; 2 Minor 850; 3 Minor 153, and cases there cited; Mechem on Agency sections 88 and 89, the paper was properly admitted. It is insisted by plaintiff in error that plaintiff's evidence fails to support the verdict, in that, "It does not show or tend to show, nor does plaintiff undertake to prove that the alleged purchaser was ready, willing or able to purchase the lands either for part cash or all cash, no evidence at all of tender or pecuniary ability." It is true that there is no evidence of tender or pecuniary ability on the part of the purchaser Ruby, to make the purchase and pay the money according to the contract, but there was evidence tending to show that Ruby was willing to purchase at the price mentioned, and declared himself ready to pay all cash or part cash, and there was no question raised as to his ability. The parties, seller and buyer were by plaintiff, Ober, brought together face to face when the proposed purchaser expressed himself as ready to pay all cash, and his financial ability was not brought in question, so that the case does not come within the ruling in the case of *Clay* v. *Deskins*, 36 W. Va. 350, and other authorities cited and relied upon by plaintiff in error.

The fourth assignment of error is the giving of the instruc-

tion on behalf of the plaintiff hereinbefore set out, which instruction is evidently founded upon the written contract between the plaintiff as agent for the defendant and the alleged purchaser Ruby, as well as upon the oral evidence tending to prove the employment of plaintiff to make the sale which contract in writing being admitted as evidence renders the instruction good and it was properly given.

For the reasons herein stated there is no error in the judgment and the same must be affirmed.

*Affirmed.*

Note by POFFENBERGER, JUDGE, (*concurring*).

I think the admission of the contract was not reversible error, if error at all. The issue was not whether a binding contract of sale had been made, or whether Ober had authority to execute a written contract for sale of the property. It was whether Stephens had agreed to pay him the amount he claimed for effecting a sale of the land, and the written agreement permitted to go to the jury only tended to prove that Ober had done more than he agreed to do, if his agency did not extend to the signing of a written contract of sale, and corroborated his testimony. The written contract is not manufactured eveidence. It does not appear that Ober's authority ended with the successful effort to consummate the sale on the day on which he got the parties together.