# CHARLESTON.

## POLING *v.* BOARD.

Submitted June 16, 1904—Decided November 22, 1904.

1. BOARD OF EDUCATION.—*Void Contract.*
   A contract of sale to a board of education of articles for use in a free school, made by a member of a board of education, is void and not enforceable, because it violates section 57, ch. 45, Code, 1899. (p. 252).

2. PUBLIC OFFICER—*Contract—Self-Interest.*
   A contract in violation of a statute made to protect the general public against corrupt action moved by self-interest and pecuniary gain in public officers, and against their bribery, and to protect the public treasury against corrupt action and waste-

ful expenditure moved by self-interest in public officers, and to promote the public good, is void and will not be enforced in the courts.   (p. 253).

:2.    PLEA.—*Averments.*

In an action to recover the price of goods under a sale that is void, because in contravention of a statute, a plea setting up its illegality need not aver that prejudice came to the purchaser.   (p. 257).                           ι

Error to Circuit Court, Barbour County.

Action by John W. Poling against the board of education of Philippi Independent District.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

J. HOP WOODS, for plaintiff in error.

SAM V. WOODS, for defendant in error.

BRANNON, JUDGE:

In an action of *assumpsit* in the circuit court of Barbour county by Poling, use of Paul, against Board of Education of Philippi District to recover the price of maps and historical charts sold by Poling, by written contract signed by Poling as agent, to said board, the defendant was allowed to file a special plea along with its plea of the general issue, setting up that when Poling sold the goods he was interested in such sale and was a member of the board of education of Philippi Independent district in Barbour county and forbidden by law to act as agent for the introduction or sale of said articles.   There was no evidence on either side, and the jury found for the defendant, the court gave judgment for it, and the plaintiff obtained a writ of error.

The case turns upon the question whether the special plea presented a defence to the action.   The Code of 1899, ch. 45, sec. .57, enacts: "No school officer, or teacher of any free school, shall act as agent for any author, publisher, bookseller, or other person, to introduce or recommend the use of any book, apparatus, furniture or other article, in the free schools of this state, or any one or more of them, or directly or indirectly contract for or receive any gift or reward for so introducing or recommending the same, nor shall such person be otherwise interested in the

sale, proceeds or profits of any book or other thing used, or to be used, in said schools." Section 59 imposes a fine for the act of not less than three nor more than ten dollars. We start with the rule of law that contracts violating positive law or against public policy are void. 9 Cyc. 464. "Courts will not aid parties to illegal contracts which are executory only, to recover thereon." *Capehart* v. *Rankin*, 3 W. Va. 571. The legislation given above is plainly designed to answer a high and healthful public policy, that is, to protect the public from loss in corrupt and extravagant sale and purchase of articles for schools made by school officers instigated to make contracts under motive of self-interest; to prevent peculation by them in paying undue prices under such bribing motive; to prevent their being bribed to buy unnecessary school equipment at corrupt and exorbitant prices; to protect tax-payers and the public treasury; to promote official purity and honesty in the administration of the public school system, which, whilst the most noble, valuable and beneficial department of the state government, involves annually the expenditure of great sums of money, and offers many opportunities for corruption, there being so many teachers and officers connected with it.

We must so construe the statute as not to emasculate it of its force and defeat its purpose. The very person who violated the statute seeks the enforcement of a sale in violation of it. Of what avail is the statute, if the very person at whom it is aimed takes the fruit of its violation? If we say that such a contract is good in law, then we encourage such contracts, promote the vice which the law condemns, and offer a premium for it. The law books say that it is a good test of the validity or invalidity of a contract whether its enforcement would encourage the mischief condemned. If it would do so, the contract is void. We must carefully regard the nature of the contract and the purpose of the statute. Impartiality, honesty, purity in public officers is a demand of public policy by common law, and this statute only applies that policy in this instance. "If a court should enforce such an agreement, it would employ its functions in undoing what it was created to do." 9 Cyc. 481. It is there said that public policy is that principle which holds that no one can lawfully do what is injurious to the public or against the public good. "Where a contract belongs to this class, it will be declared void'

though in the particular instance no injury to the public may have resulted. In other words, its validity is determined by its general tendency at the time, and if this is opposed to the interests of the public, it will be invalid, even though the intent of the parties was good, and no injury to the public would result in the particular case." 9 Cyc. 481. "Public officers should act from high consideration of public duty, and hence every agreement whose tendency or object is to sully the purity or mislead the judgment of those to whom high trust is confided is condemned by the courts." 9 Cyc. 485. Long ago it was announced by Lord Holt that if a statute prohibit an act and impose a penalty for doing it, every contract made in violation of the statute is void, though the statute do not say it shall be void. We cannot say that such is the hard and fast rule of our days. It is still the *prima facie* rule, the guiding star. It does not, in our day, inevitably follow from such prohibition and penalty that a contract banned by the statute is void; but we "look to the language of the statute, the subject matter, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished; and if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold." 9 Cyc. 477. If we say that the legislature meant to merely prohibit, and rely only on the penalty for the enforcement of the law, and in the nature of the case that will fairly accomplish the object of the statute, then the statute goes no further. But it ought to be plain that the penalty will accomplish the object. The courts ought, before giving such construction, to be able to say that by giving the contractor the fruit of the contract they do not deny the statute practical usefulness. Can we think that the imposition of the petty penalty of ten dollars at most was the only means in the legislative mind for the enforcement of this statute? Can one think the Legislature, when it both pronounced the act unlawful and penalized it, intended to legalize the contract? There is a wilderness of differing cases on this subject; it is useless to try to analyze them. We are cited by the plaintiff to *Ober* v. *Stephens*, 54 W. Va. 354, holding that the act prohibiting a stock broker from doing business without license and imposing a penalty did not forbid his recovery for service, the court being of the opinion that it seemed that the penalty would sufficiently answer the aim of the statute.

That concerned only revenue, and it is there held that where it concerns only revenue, and the act was not designed for the public welfare in general, it is likely the legislation was only designed to inflict the penalty.

*Toledo Co.* v. *Thomas,* 33 W. Va. 566, is cited for the plaintiff. It holds that the act that foreign corporations may do business in the state by complying with certain requirements, and not otherwise, and imposes a penalty, does not avoid a contract, but that the penalty can alone be resorted to to enforce the statute. *National Bank* v. *Mathews,* 98 U. S. 621, holds that such a bank can enforce a deed of trust given to secure a note assigned to it. The act of Congress simply prohibited it from holding real estate under mortgage. There was no penalty. It was held not to come under the prohibition. The case is inapt here. *Niemey* v. *Wright,* 75 Va. 239, involves whether a seller of fertilizers could recover their price under a statute saying that fertilizers should be labeled, and imposing a penalty for selling those not so labeled. The court said the general rule is that a statute containing a prohibition and penalty makes the act unlawful, but that it did not follow that it made a contract void. It admitted that when the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. Conceding this general rule, the court said that "the mere imposition of a penalty does not itself, *in every case,* necessarily imply an intention by the legislature that every such contract in contravention of the statute should be void in the sense that it is not to be enforced in a court." The court allowed a recovery. I mention as a case along this line *Middleton* v. *Arnolds,* 13 Grat. 489, holding that bonds given for land sold under pretense title can be collected by law. The statute prohibited sale of pretense title and imposed a penalty. I draw a marked line of demarcation between those cases and our case. The statutes which they passed upon did not so deeply and vitally concern the public weal, pure official conduct, protection against bribery of school officers, bribery of public officials, misuse and waste of public money, as does the section of the Code governing this case. The old case of *Wilson* v. *Spenser,* 1 Rand. 76, lays down the true rule in such a case as this in holding that neither a court of equity nor law will enforce a contract in violation of laws "enacted for the public good."

"Contract in violation of a law which seeks only collection of revenue is not void. It is otherwise when the design of the law making power is to protect the public from fraud in the contract or for the promotion of some object of public policy." *Bank* v. *McCosker,* 82 Md. 518, (51 Am. St. R. 478). It may be that the distinction is not sound, and that also contracts against laws made only to protect revenue are void. Story on Contr., (5th Ed.), sec. 758. Many cases however make the distinction. 2 Mechem on Sales, secs. 1045, 1046; Benj. on Sales, (7th Ed.) by Bennett, sec. 531; Hammon, Contracts, p. 339.

The Supreme Court has twice said that if the statute prohibits and penalizes an act, and is silent as to whether the contract is void, and contains nothing from which the contrary may be inferred, a contract in contravention of it is void. *Harris* v. *Runnels,* 12 How. 79; *Miller* v. *Ammon,* 145 U. S. 421. Tested by these cases this contract is void.

It is mentioned, but not urged in argument, that Poling, who as agent made the contract, was a member of a board of education of another district. The statute makes no such exception. It prohibits all school officers from acting as agents or being interested in sales to schools. True, we see that if he were one of the board of the district buying, it would be a plainer wrong against law; but though of another district he might collude with other school officers; he might have from his office undue influence in selling articles not needed or for excessive price to other districts. As a school officer he should do no act to the harm of any district, nor be induced to do so by self-interest.

The statutory provision above quoted was made to execute section 9, article 12 of the constitution, reading thus: "No person connected with the free school system of the State, or with any educational institution of any name or grade under the State control, shall be interested in the sale, proceeds or profits of any book or other thing used, or to be used therein, under such penalties as may be prescribed by law: *Provided,* That nothing herein shall be construed to apply to any work written, or thing invented, by such person."

This seems broader than the statute words. It is very comprehensive and sweeping in words and purpose, and the statute words should, in view of that section of the constitution, be given broad remedial meaning. But the constitution itself would make

this contract void. It would apply to the party making this contract, though he was not an officer of the district buying the articles, because of the words "no person connected with the free school system."

It is merely suggested that the plea should set out that the district was prejudiced, and offer to return the goods sold. If the statute makes the sale void, it does not matter whether the district was prejudiced, as authority cited above from Cyc. shows. The law implies prejudice. Offer to return goods is not a condition precedent to this defense. No law is cited to support this suggestion.

It is suggested that the plea should be under Code, chapter 126, section 5. It is simply a plea of illegality of the contract, not of fraud in its procurement or breach of warranty, or failure of consideration.

Objection is made to the affidavit to the plea. Where is the law that requires such a plea to be sworn? None is cited.

Judgment affirmed.

*Affirmed.*