# CHARLESTON.

TOLEDO TIE & L. CO. *v.* W. W. THOMAS *et als.*

Submitted January 23, 1890.—Decided March 22, 1890.

1. ABATEMENT—ANSWER—PLEADING.

When the defendant in an equity suit files a plea in abatement in proper form, and at the proper time, and at the same time files his answer formally pleading the same matters therein, and said answer is duly sworn to, the said matter in abatement will be treated as properly put in issue, although the said plea is not sworn to.

2. FOREIGN CORPORATION—CONTRACT.

A contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business in another State will not, on that account, be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others.

3. FOREIGN CORPORATIONS—CONTRACT.

Our statute — sec. 30, ch. 54 Code — which prescribes, that foreign corporations shall comply with certain regulations as a prerequisite to their right to hold property or do business in this State, and fixes a penalty for their failure to do so, does not make the contracts made in this State by such corporations before compliance with said regulations absolutely void and unenforceable in the courts of this State.

4. INJUNCTION.

> A cause in which it is held, that the court did not err in over-
> ruling a preliminary motion to dissolve an injunction made be
> fore the final hearing of the cause on its merits.

*Simpson & Howard, Gunn & Gibbons* and *Simpson & Thomas*
for appellant.

*Tomlinson & Wiley* and *Kenna & Chilton* for appellees.

SNYDER, PRESIDENT :

On November 21, 1888, the Toledo Tie and Lumber Co.
entered into a written contract with W. W. Thomas for the
purchase of 75,000 ties at the price of thirty two cents per tie
for all first-class ties and twelve cents per tie for all second-
class ties, to be delivered at Point Pleasant in this State on
board the cars by June 1, 1889, or as soon thereafter as the
rises in the streams will permit; and further the said Com-
pany agreed to advance to said Thomas eighteen cents per
tie on all first-class and five cents per tie on all second-class
ties when such ties shall have been inspected and branded on
the banks of Eighteen-Mile creek in Putnam county, W. Va.;
and said Company shall have the right to take possession of
all ties so inspected and branded on which it has made such
advances, wherever they may be found, in case the said
Thomas fails to deliver the same. It is also agreed that the
eighteen cents per tie advanced as aforesaid shall be consid-
ered full payment for said ties when so inspected : and the
said Thomas binds himself to raft and deliver said ties on
the cars at Point Pleasant as aforesaid and he shall then be
paid the additional sum of fourteen cents per tie on first-class
and seven cents per tie on second-class ties. Under this con-
tract Thomas commenced getting out and delivering ties, but
before completing his part of the contract he became finan-
cially embarrassed, and by deed dated July 10, 1889, he as-
signed to J. C. Thomas and Rufus Switzer, trustees, for the
benefit of his creditors, all his choses in action and the benefit
of all contracts which he has with any person whomsoever.
A few days after said assignment, to-wit, on July 15, 1889,
the said Toledo Tie and Lumber Co. presented to the Judge
of the Circuit Court of Mason county their bill against the
said W. W. Thomas and said J. C. Thomas and Rufus

Switzer, trustees, and obtained from said Judge an injunction restraining and inhibiting the said defendants from stopping or interfering with the said Company in loading and shipping said ties. At the August rules 1889 the plaintiff filed its bill with the injunction thereon as aforesaid in the said Mason county Circuit Court, and at the same rules the defendants filed thereto two special pleas, a general demurrer and their answers to the plaintiff's bill. The plaintiff demurred to each of said special pleas, and the cause was on August 13, 1889, heard. on the said pleadings, depositions and the motion of the defendants to dissolve the injunction, and the court sustained the demurrers to said pleas and overruled the motion to dissolve the injunction, and to this order the defendants J. C. Thomas and Rufus Switzer, trustees, have appealed to this Court.

It is insisted that the court erred in not dismissing the bill for want of jurisdiction. The defendants' first special plea avers, that the supposed cause of action alleged in the bill did not, nor did any part thereof, arise in the county of Mason, that the same arose within the county of Putnam in this State, and that at the time of issuing the writ in this suit the defendants resided and still reside in Putnam county. This plea is not sworn to and is therefore not good as a plea in abatement. But the defendants at the same rules at which the plaintiff filed its bill filed their answers in which they formally plead and rely upon the same matters alleged in the said first special plea, and the answer is sworn to in due form. I think, therefore, taking this plea and answer together, the defendants were entitled to an abatement of the suit, provided the facts alleged are sufficient for that purpose and said facts should be proved.

Our Statute—§§ 1 and 2 of ch. 123 Code of 1887, provides that suits of the class to which this suit belongs shall be brought either in the county wherein any of the defendants resides, or wherein the cause of action, or any part thereof, arose. The defendants, as we have seen, plead that none of them reside in Mason county and that no part of the cause of action arose in said county; but on the contrary, they all reside in the county of Putnam and every part of the cause of action arose in said county; therefore, if these allegations

be true, the express mandate of the statute is that this suit should have been brought in Putnam county, and per sequence it was improperly brought in the county of Mason.

The appellants further insist that the court erred in sustaining the demurrer to the said second special plea. This plea in effect avers, that the plaintiff is a foreign corporation, created and organized under the laws of the State of Ohio; that the contract alleged in the plaintiff's bill was made in Putnam county in this State, and that from January 1, 1889 and continuously thereafter up to the time of the institution of this suit, the plaintiff as such corporation, did transact divers of other business in the counties of Putnam, Mason and Kanawha of this State, and that it did not, at that time or at any time before the institution of this suit, comply with any of the requirements of section 30 of chapter 54 Code 1887 of this State; and therefore the defendants pray that the suit be abated. This plea raises the important question of the true interpretation of said statute. Among other provisions the said statute declares, in substance, that any corporation, created by the laws of any State or foreign country, "may, unless it be otherwise expressly provided, hold property and transact business in this State, upon complying with the requirements of this section, and not otherwise." It then requires such corporation to file a copy of its charter with the Secretary of State, and file in each county in which it does business a certificate of the Secretary of State that it has so filed such copy of its charter in his office; and it further provides, that "Every such corporation, which shall do business in this State, whithout having complied with the provisions of this section, shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not less than $500.00 and not more than $1,000.00 for each month its failure so to comply shall continue."

In the absence of any statute limiting the right of a corporation to do so, it may unless contrary to the public policy of the State, hold property and do business without as well as within the State or county by which it was created. Ang. & Ames on Corp. §§ 372–376; Field on Corp. § 363. This statute, being not only in derogation of common law, but penal in its character, must be construed strictly. There

is certainly no public policy of this State which is contravened by permitting corporations such as the plaintiff here to do business in the State, because the statute expressly authorizes them to do so upon compliance with its requirements. The evident purpose of these requirements of the Statute is to protect parties dealing with foreign corporations from imposition, and to secure convenient means of obtaining jurisdiction in the local courts of the State, and information such as will facilitate the service of process upon such corporations. It is clearly not the primary purpose of the legislature, in passing such statutes to render the contracts and dealings of such corporations, which have not complied with these requirements, void and unenforceable. Hence the decided weight of authority is, that, where the legislature has not expressly declared that this result shall follow from a failure to comply with the Statute, the courts ought not to imply such a result, unless this be necessary in order to attain the primary object for which the Statute was enacted. Upon this ground it has been held, that a contract made by a foreign corporation before it has complied with the statutory prerequisites to the right to do business will not, on that account, be held absolutely void, unless the Statute expressly so declares ; and if the Statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others. *Columbus Ins. Co.* v. *Welsh,* 18 Mo. 229 ; *Union &c. Ins. Co.* v. *McMillen,* 24 Ohio St. 67 ; *Ehrman* v. *Teutonia Ins. Co.,* 1 McCrary 123 ; *Clay Fire Ins. Co.* v. *Huron Salt Co.,* 31 Mich. 346 ; *Hartford &c. Co.* v. *Mathews,* 102 Mass. 221 ; 2 Morawetz on Corp. § 665.

We are aware that the courts of Indiana, Illinois, Wisconsin and perhaps in some other States hold a different doctrine. In Vermont and Oregon it has been held, that a non-compliance with the precedent conditions of the statutes of those States by foreign corporations rendered their contracts void. But it will be observed that these statutes imposed no penalty or the failure to comply with their provisions ; and it is principally upon this ground that the contracts are held void, because otherwise the Statute might be evaded with impunity. Thus in *Bank* v. *Page,* 6 Oregon 431, 436, the court

says: "The general rule is that a contract in violation of law is void. The only exception to the rule is that when a law imposes a penalty for the prohibited act, and it clearly appears that the legislature intended no more than to impose the penalty for the violation of the law, a contract made in violation of the Statute is not void." It is evidently the want of such penalty in the Statute that influenced the court to hold the contract void. And such seems to be the ground of the decisions in Indiana and other States. *Mowing &c. Co* v. *Caldwell*, 54 Ind. 273; *Lester* v. *Howard Bank*, 33 Md. 558.

The authorities on this question are reviewed in 2 Morawetz on Corp. §§ 662–666, and that author announces as his conclusion therefrom, that "Unless it appear affirmatively that the legislature intended to render the forbidden act or contract absolutely void in legal contemplation, it will not be so held," citing *Nat. Bank* v. *Mathews*, 98 U. S. 621, 627.

Let us apply these principles to our Statute. The first provision is that the foreign corporation may do business in this State "upon complying with the requirements of this section, and not otherwise." It next declares, that such corporation so complying shall have the same rights and privileges and be subject to the same liabilities as domestic corporations. And it finally imposes a penalty upon such corporation for its failure to comply with the regulations of the Statute. There is here no express declaration that the failure to comply shall render the contracts of the corporation absolutely void. Nor does it affirmatively appear that the legislature so intended. But it is expressly provided and declared, that a failure to comply with the regulations prescribed shall be punished by fine. And his imposition of a penalty, as we have seen, in the absence of any express declaration to the contrary, must be held to be exclusive of all other penalties. That such was the purpose of the legislature in enacting this Statute is manifest from the provision therein in respect to railroad corporations. It prescribes additional regulations for such companies and declares that unless they are complied with such companies shall not maintain any action or suit in this State. The whole section shows no purpose to treat railroad corporations with more

favor than other corporations, yet if we hold the contracts of all other corporations absolutely void, while only denying to railroad companies the right to sue in our courts, the effect would be to discriminate in favor of the latter. Upon the whole, I am of opinion that the court did not err in sustaining the demurrer to said second special plea.

It is further contended by the appellants, that there is no equity in the plaintiff's bill and that the injunction should have been dissolved for want of jurisdiction in the equity court. The bill after setting out the contract befor referred to between the plaintiff and the defendant W. W. Thomas, avers that under said contract said Thomas had delivered to the plaintiff about 10,000 ties, for which it paid him in full; that Thomas on the recent rises in the streams had run down Eighteen Mile creek about 35,000 ties, the most of which are in the Kanawha river and some of them have been put into rafts, preparatory to shipment and delivery to the plaintiff at Point Pleasant; that the plaintiff had inspected and branded said ties and paid Thomas in full for the same and taken possession of them before they had been run down Eighteen Mile creek, that after the said ties had been run down said creek to the Kanawha river and some of them were at Point Pleasant in Mason county and were being loaded on the cars, the defendants, J. C. Thomas and Rufus Switzer, trustees, by their threats and interference with the agents and employes of the plaintiff and the railroad company, openly and wantonly prevented and stopped the plaintiff from loading and the railroad company from receiving and shipping any of said ties. It seems to me these facts which are more formally and specifically set forth in the bill are sufficient, if sustained by proof, to entitle the plaintiff to relief in a court of equity.

A large mass of depositions were filed by either side, but as no final decree or order settling the principles of the cause was made by the court, this appeal being simply from an order refusing to dissolve the injunction awarded the plaintiff, it is not incumbent upon this Court to pass upon the proofs further than to decide, as we do, that the court did not err in overruling the defendants' motion to dissolve the said injunction. We are not called upon to decide, and we

do not decide, in advance of final action by the court below, whether on the proofs as they now are or as they may hereafter be made to appear in this cause, the Circuit Court should or should not on the final hearing dismiss the bill. All we now decide is that, as a preliminary motion, the court did not err in refusing to dissolve the injunction, and that such motion ought not to be finally acted upon until the hearing of the cause on its merits.

In reference to the objection to the jurisdiction of the Circuit Court of Mason county as set forth in the defendants' first special plea and answers to the bill, hereinbefore referred to, we think the proofs do not sustain the allegations therein made. The bill avers and the proofs show that a part of the ties in controversy in this cause were at Point Pleasant in said county at the time this suit, was commenced and that the rights and acts of the parties in respect to said ties is a part of the controversy in this suit and that being so the Circuit Court of said county had jurisdiction, provided the process was served, as it was in this cause, on some of the defendants in said county. For the foregoing reasons, I am of opinion that the order of the Circuit Court refusing to dissolve the injunction should be affirmed.

AFFIRMED.