TENNIS BROS. CO. v. WETZEL & T. RY. CO.

(Circuit Court, N. D. West Virginia. August 22, 1905.)

No. 630.

1. COURTS—FEDERAL COURTS—ENFORCEMENT OF STATE STATUTES—REGULATION OF FOREIGN CORPORATIONS.

State statutes, imposing requirements on foreign corporations as a condition precedent to their doing business in the state, are valid, if reasonable in their provisions, and will be enforced by the federal courts, which will follow the construction placed on them by the courts of the state.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 957.]

2. CORPORATIONS—FOREIGN CORPORATION—RIGHT TO SUE—PLEA IN ABATEMENT.

Code W. Va. 1899, c. 54, § 30, as amended by Acts 1901, p. 108, c. 35, § 31, so as to apply to all foreign corporations, contains certain requirements as conditions precedent to the right of such corporations to do business in the state, and further provides, inter alia, that until it complies with such provisions no such corporation shall "maintain any action, suit, or proceeding in this state, * * * and its failure so to do may be pleaded in abatement of any such action, suit or proceeding." Held, that under Code W. Va. 1899, c. 125, § 16, which expressly provides that no plea in abatement shall be received, after the defendant has pleaded in bar, or answered to the declaration or bill after a rule to plead, the objection that a complainant was a foreign corporation which had not complied with the statute could not be raised after the cause was at issue on the facts and had been set down for hearing.

3. MECHANICS' LIENS—CORPORATIONS—WEST VIRGINIA STATUTE.

Code W. Va. 1899, c. 75, § 7, which provides that "every workman, laborer, or other person who shall do or perform any work or labor by virtue of any contract for any incorporated company" shall have a lien for the value of such work, gives a lien to a corporation which comes within its terms, under Code W. Va. 1899, c. 13, § 17, giving rules for the construction of the statutes, and providing that "the word 'person' includes corporations if not restricted by the context."

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mechanics' Liens, § 11.]

4. SAME—WORK OR LABOR—CHARACTER OF SERVICES.

Under such lien statute, a contract by a corporation relating to the construction of a line of electric railroad, by which it undertook to hire the labor, supervise the grading, the trestle and bridge work, the laying of the rails, etc., being primarily liable to pay all labor bills, supply all tools, and to be wholly under the direction and control of the railroad company's supervising engineer, was one to perform "work and labor," which entitled it to a lien, and such right is not defeated by the fact that the contract gave the railroad company the option to pay in part in its bonds, where such bonds were not tendered.

5. SAME—TERMINATION OF CONTRACT—UNUSED MATERIALS.

The fact that material purchased by the contracting company for the work, under authority given by the railroad company as provided by the contract, had not been used at the time the contract was terminated by the railroad company, does not affect the right to a lien therefor.

6. CONTRACT—PERFORMANCE—EVIDENCE CONSIDERED.

Evidence considered, and held insufficient to sustain the claim of a defendant that the work of complainant under a contract was performed with such negligence and incompetence as to defeat complainant's right to recover for the same or entitle defendant to recoup damages.

7. RECEIVERS—EFFECT OF RECEIVERSHIP ON EXECUTORY CONTRACTS.

A federal court sitting in West Virginia, although having priority of jurisdiction, will not decree damages for the wrongful termination of a contract by a defendant corporation, where a few days afterward a re-

140 F.—13

ceiver was appointed for defendant by a state court in insolvency proceedings, which, under the law of the state as settled by decision, had the effect of terminating all executory contracts not adopted by the receiver, without liability for their breach.

In Equity. On final hearing.

H. P. Camden, for plaintiff.

V. B. Archer, Geo. R. Wallace, and Benjamin L. Hirschfield, for defendant.

DAYTON, District Judge. On the 15th day of April, 1903, a contract was entered into between Tennis Bros. Company, a corporation under the laws of Delaware, and the Wetzel & Tyler Railway Company, a corporation under the laws of West Virginia, whereby the first party agreed to supervise the construction of an electric railway for the second party, furnishing its own service and that of its engineers and office force to an extent necessary to efficiently and promptly construct the same; to obtain proposals for supplies and material, and submit them for approval to the railway company's supervising engineers; to supply all tools necessary, except locomotive and electric construction car; to employ and pay for all necessary labor in said construction, rendering biweekly bills at cost for such labor; not to order any materials without written authority from the second party; to follow certain general conditions made part of the contract, especially the general and specific directions of the second party's supervising engineers; and, finally, to obtain and furnish indemnity insurance in approved company, saving harmless the second party from suits for damages occasioned by accidents during the construction aforesaid. The second party, the railway company, on its part, agreed to furnish all materials and supplies, excepting tools; to reimburse the first party for moneys expended for labor upon submission of biweekly bills, with pay rolls attached, approved by the supervising engineer; to pay to first party in full for its services the sum of 10 per cent. on actual net cost of all necessary materials and labor expended upon grading and drainage, bridges, culverts and trestles, paving and ballast, girder and T-rails, special work, bolts and spikes, poles, ties, fences and cattle guards, trolley and feeder wires, overhead line work, but not to include rolling stock, electric car equipment, power house and contents, real estate, or buildings. One-half of this 10 per cent. compensation was made payable in 5 per cent. 30-year gold bonds at 90 cents on the dollar, to be a part of a $300,000 issue secured as a first lien upon the property. Under this contract the plaintiff company proceeded to work until September 11, 1903, when the defendant company by written notice repudiated the contract and required the plaintiff to cease all work. Thereupon, on September 18, 1903, the plaintiff company filed in the offices of the county courts of Wetzel and Tyler counties, W. Va., where defendant company's property was situate, its verified account, aggregating $12,101, and declaration of a lien upon said railway property, which was on that day duly admitted to record, and on September

28, 1903, instituted this suit to enforce said lien, against said defendant railway company's property, and for the further purpose of securing a decree against the defendant for its damages incurred by reason of said defendant's repudiation of the contract. On January 19, 1904, the defendant filed its demurrer to this bill, which, on January 28, 1904, was overruled; and on June 15, 1904, defendant filed answer, to which plaintiff filed general replication, and on June 23, 1904, by leave of the court, filed a cross-bill in the cause, upon which process was awarded, demurrer entered and overruled, answer made, and general replication thereto filed. It should be added that plaintiff in the original bill alleged that the contract was modified or added to by a subsequent agreement, whereby it was to superintend and receive the 10 per cent. on cost of cars, power house, wells and equipment, and material used in construction therewith.

The defenses set up by the original demurrer, by the answer to the original bill, and by the cross-bill, may be summarized as follows: First. Tennis Bros. Company, a foreign corporation, not having complied with the provisions of section 31, c. 35, p. 108, of the Acts of 1901 of West Virginia, requiring all corporations to accept in writing the provisions of that act and file such acceptance, was by the express terms of the act prohibited from bringing this suit. Second. Tennis Bros. Company under the contract were not laborers or materialmen, but solely superintendents of construction—at the outside, contractors—and therefore not entitled to a lien under section 7, c. 75, of the Code of West Virginia of 1899. Third. That in no event can such lien attach for material ordered but not used during the continuance of the contract. Fourth. That the whole claim of Tennis Bros. Company, even if a lien attached, was defeated by the manner in which the work of superintendence in construction was performed. Fifth. That by reason of the gross, willful, negligent, extravagant, and unskillful manner in which this work was done the defendant railway company has been damaged to the extent of $50,000, and a decree for this amount, and for the removal of the cloud on title by reason of the recordation of said lien, is asked for in said cross-bill. Sixth. A positive denial that the original contract was ever modified.

Taking up these defenses in their order, it is to be noted as to the first that the Legislature of West Virginia on the 18th day of February, 1901, passed the act known as chapter 35 of the Acts of that year, and in section 31 thereof amended section 30 of chapter 54 of the Code of 1899. The original Code section in full was as follows:

"Any corporation duly incorporated by the laws of any state, or territory of the United States, or of the District of Columbia, or of any foreign country, may, unless it be otherwise expressly provided, hold property and transact business in this state, upon complying with the requirements of this section, and not otherwise. Such corporation so complying shall have the same rights, powers and privileges, and be subject to the same regulations, restrictions and liabilities, that are conferred and imposed by this and the fifty-second and fifty-third chapters of this Code, and by chapter twenty of the Acts of 1885, on corporations chartered under the laws of this state. Every such corpora-

tion shall file with the secretary of state a copy of its articles of association and of the law and authority under which it is incorporated. The secretary of state shall issue to every such corporation complying with the provisions of this section a certificate of the fact of its having done so, which certificate shall be filed and recorded in the office of the clerk of the county court of the county, or one of the counties in which its business is conducted. Such corporation shall also file, in the said clerk's office, a copy of its charter, to be kept and preserved therein. Every railroad corporation doing business in this state under the provisions of this section, or under charters granted or laws passed by the state of Virginia, or this State, is hereby declared to be, as to its works, property, operations, transactions and business in this state, a domestic corporation, and shall be so held and treated in all suits and legal proceedings which may be commenced or carried on by or against any such railroad corporation, as well as in all other matters relating to such corporation. No railroad corporation which has a charter, or any corporate authority, from any other state, shall do business in this state as the lessee of the works, property or franchises of any other corporation or person, or otherwise; or bring or maintain any action, suit or proceeding in this state, until it shall, in addition to what is hereinbefore required, file in the office of the secretary of state a writing, duly executed under its corporate seal, accepting the provisions of this section and agreeing to be governed thereby, and its failure so to do, may be pleaded in abatement of any such action, suit or proceeding; but nothing herein contained shall be construed to lessen the liability of any corporation, which may not have complied with the requirements of this section, upon any contract or for any wrong. Every such corporation which shall do business in this state, without having complied with the provisions of this section, shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than five hundred dollars nor more than one thousand dollars for each month its failure so to comply shall continue. Prosecutions under this section shall be in the county in which the seat of government is. For every certificate issued under this section the secretary of state shall be paid by the corporation a fee of five dollars."

The legislative act of 1901 amended the railroad clause of this section, so as to make it applicable to all corporations, and not alone to railroads. The acts required to be done were the usual ones of filing charter with the Secretary of State, obtaining his certificate, recording same in some county where doing business, appointing attorney in fact to accept process, etc.

Reasonable requirements by state laws of foreign corporations, as conditions precedent to doing business in such states, have been upheld by federal courts in such cases as: Diamond Glue Co. v. U. S. Glue Co. (C. C.) 103 Fed. 838; Empire Milling Co. v. Tombstone M. & M. Co. (C. C.) 100 Fed. 910; Hooper v. State of California, 155 U. S. 648, 652, 15 Sup. Ct. 207, 39 L. Ed. 297, and cases cited. The federal courts, however, in construing these statutes, will be governed by the constructions given by the local courts of last resort. This statute, before amended (and the amendment is substantially the same as the original, except it extends the clause in respect to railroads in the original to all foreign corporations), has been cited and more or less construed by the Supreme Court of Appeals of West Virginia in the cases of Childs v. Hurd, 32 W. Va. 66, 9 S. E. 362; Rece v. N. N. & M. V. Co., 32 W. Va. 164, 9 S. E. 212, 3 L. R. A. 572; Toledo T. & L. Co. v. Thomas, 33 W. Va. 566, 11 S. E. 37, 25 Am. St. Rep. 925; Quesenberry v. People's B. L. & S. Ass'n, 44 W. Va. 512, 30 S. E. 73; Savage v. People's B. L. & S. Ass'n, 45 W. Va. 275, 31 S. E. 991; Floyd v. National L. & I. Co.,

49 W. Va. 327, 38 S. E. 653, 54 L. R. A. 536, 87 Am. St. Rep. 805. Of these cases, Childs v. Hurd holds:

"Where the statute law of a state requires that, before a corporation can do any business, it shall record in a certain county the certificate of its incorporation, this is a condition precedent, and the corporation has no power to transact any business till such condition is complied with, and such corporation has really no existence till such certificate of incorporation is so recorded."

But a careful reading of the body of the opinion shows that the court in this case was construing a New York statute, not its own, and in such construction was following the New York decisions thereon.

Rece v. N. N. & M. V. Co. decided that the Legislature had no power to compel foreign corporations to become resident corporations as a penalty for doing business in the state, so as to prohibit the removal of causes from state to federal courts, as had been sought to be done by this section.

Quesenberry v. People's, etc., Ass'n and Savage v. Same simply hold:

"A statute merely enabling a corporation to hold property or do business in this state does not make it a domestic corporation."

Nor does the appointment by it of an attorney to accept service of process make it a domestic corporation.

The cases of Toledo T. & L. Co. v. Thomas and Floyd v. National L. & I. Co. are important. In the first a well-considered discussion of this statute is had, and it is held substantially that the statute, being against common-law right, is to be strictly construed; that, unless such statutes distinctly so declare, contracts made by foreign corporations will not be void; that this statute does not so declare; that if the statute imposes, as this one does, a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others. In the latter case (Floyd v. National L. & I. Co.) the court has gone farther and held:

"So far as it conflicts with the provisions of this section, the general law of comity, as affecting the rights of foreign corporations, has been replaced in this state."

Does the penalty by fine, prescribed in next to the last clause of the section, relate to the clause affecting railroads, now by the act of 1901 extended to all corporations, or is it to be construed to relate solely to the first clause relating to corporations generally? If it applies to the railroad clause, as well as to the others, then, under the ruling in Toledo T. & L. Co. v. Thomas, it must be held exclusive of all other penalties, including this prohibition to sue.

Counsel for defendant argues ably that it does not extend to the railroad clause, and that this railroad clause, now made general, must be construed simply to suspend the right to bring suit until the foreign corporation complies with the requirements, but without in any way vitiating its contract. I admit the reasoning is strong for this position; yet, I must call attention to the fact that the penalty clause is very general, and uses the exact words with which the railroad clause starts out, to wit:

"Every·such corporation which shall do business in this state without having complied with the provisions of this section shall be guilty of a misdemeanor," etc.

And I am therefore inclined to hold that it does apply to the railroad clause, which is "one of the provisions of this section," and is therefore exclusive of the other penalty prohibiting the bringing of suit.

But if I am wrong in this position, and I admit that it is open to argument and doubt, there is in this case another reason why I must overrule this defense, which is conclusive to my mind. The language of the statute expressly provides that it is to be pleaded in abatement. Section 16, c. 125, of the Code of West Virginia of 1899, distinctly provides that no plea in abatement shall be—

"Received after the defendant has pleaded in bar, or answered to the declaration or bill, after a rule to plead, or a conditional judgment or a decree nisi."

The case cited by counsel of Toledo T. & L. Co. v. Thomas, 33 W. Va. 566, 11 S. E. 37, 25 Am. St. Rep. 925, does not sustain the position taken, nor does it in any way modify the requirements of the statute. In that case a plea in abatement, not sworn to as required, was, however, filed in time at the first return rules, and at the same rules an answer, properly sworn to, setting up the same matter of abatement, was also filed. The court held, according to well-settled rules of equity, which disregard form, that the answer, properly verified and filed in time, was sufficient to present the matter of abatement. But in this case the cause was matured and set down for hearing; a demurrer was entered and strenuously argued and insisted upon in bar of plaintiff's right, was formally overruled, and defendant ruled to answer within a stated time, which on its motion was extended; and the answer was in court at last filed, and for the first time set up this defense. Eight days after the defendant further obtained leave and filed against plaintiff its crossbill seeking affirmative relief. Under these circumstances I have no hesitancy in saying that this technical defense came too late and must be overruled.

The second proposition, to the effect that Tennis Bros. Company was not, upon a proper construction of the contract, a workman, laborer, or other person performing labor by virtue of contract, and therefore could have no lien under section 7 of chapter 75 of the Code of 1899, was set up and earnestly insisted upon by the demurrer overruled by my predecessor; but it has again been set up and relied upon in the answer and argument, and should be considered upon this final hearing.

Section 7 of chapter 75 of the Code of 1899, relied upon by plaintiff, is as follows:

"Every workman, laborer, or other person who shall do or perform any work or labor, by virtue of any contract for any incorporated company doing business in this state, shall have a lien for the value of such work or labor, upon all the real estate and personal property of said company, and such lien shall have priority over any lien created by deed or otherwise on such real estate or personal property, subsequent to the time when the said labor was performed, but there shall be no priority of lien as between the parties claiming under the provisions of this section. Provided, that no lien shall

be created under this section for labor performed more than nine months before such lien was recorded."

The ninth clause of section 17 of chapter 13 of the Code of 1899, relating to the general rules for construction of statutes, provides:

"The word 'person' includes corporations if not restricted by the context."

Applied in B. & O. R. Co. v. Gallahue's Adm'rs, 12 Grat. 663, 65 Am. Dec. 254; Miller's Ex'r v. Commonwealth, 27 Grat. 110; Quesenberry v. People's B. L. & S. Ass'n, 44 W. Va. 514, 30 S. E. 73.

I can see nothing in the statute restricting this lien law to an individual. I can see no reason why a corporation, by and through its agents and employés, may not, like "other persons," do and perform "work or labor by virtue of any contract for any incorporated company," and thereby acquire a lien under this section 7 of chapter 75 of the Code of 1899. In Chapman v. Brewer, 43 Neb. 890, 62 N. W. 320, 47 Am. St. Rep. 779, construing a similar statute, it is expressly held the word "person" does include a corporation. The question, therefore, narrows itself down to a consideration of whether the things provided to be done by this Tennis Bros. Company under the contract can be considered "work or labor" in the meaning of this statute. The contention to the contrary does not seem to me to be sound. This company undertook to hire the labor, supervise the grading, the trestle and bridge work, the laying down of the rails, and numerous other things, being primarily liable to pay all labor bills, supply all tools, and to be wholly under the direction and control of defendant's supervising engineer. It would seem clear that this could be nothing else than work and labor under contract. It would likewise reasonably appear plain that the manner of arriving at the compensation to be paid for this labor by the terms of the contract would be immaterial. It might have provided for a fixed gross sum, for a sum based upon the number of men employed and the days of work required. It did provide that the compensation for this labor should be arrived at by taking a per cent. amount of the outlay made in accomplishing the work. I have had some trouble in determining what effect the clause providing for one-half of this compensation to be paid in bonds has upon this lien; for these bonds, if tendered promptly, would, to the extent at least of one-half the amount, have destroyed the right to this laborer's lien, because their payment period ran far beyond that in which lien could be filed and enforced by suit. Cushwa v. Improvement Co., 45 W. Va. 490, 32 S. E. 259. But this method of payment under the contract was clearly optional with the defendant, and it was not accepted. No bonds so far as disclosed were ever issued, certainly not tendered to plaintiff, and the right to do so may well be assumed to have been abandoned. Therefore I think the demurrer was properly overruled, and this second ground of defense must fall.

The third claim, that in no event can lien attach for material ordered, but not used, must likewise be overruled under our view that the amount of material furnished, or what is done with it, is only material so far as its cost furnishes a basis for determining the

amount of compensation to be paid plaintiff for its work and labor. If this material was not used, plaintiff may not have, in consequence, been compelled to do so much work as if it had been used. This view has been taken by plaintiff, and in consequence a lesser per centum is charged, so far as this unused material is concerned.

The fourth and fifth claims of defense, to the effect that the plaintiff so badly performed its obligations under the contract as to forfeit its whole claim and create a claim against itself for $50,000 damages in favor of the railroad company, are to be decided solely from the evidence and may be disposed of together. There can be no denial of defendant's right under proper pleadings, as have here been made, to recoup damages for bad work and useless and extravagant outlay. The fact remains, however, that the burden is upon the defendant to make good such claim by preponderating evidence. Without taking the time to set forth the evidence, which is voluminous, it will be sufficient for me to say that my analysis of it leads me to the conclusion that it is too general, vague, and indefinite, if not contradictory, to substantiate the claims of defendant. For instance, bitter complaint is made that C. C. Tennis did not give sufficient of his personal attention to the work, as he had promised to do, and which promise, it is alleged, was one of the superinducing causes of the execution of the said contract by the defendant company, but, on the contrary, intrusted the work to incompetent foremen; yet, it is in evidence, and not substantially denied, that the defendant company, through its agents, sought to retain, after it had canceled the contract, most of these foremen to complete the work, going so far in instances as to offer increased compensation. Again, in almost every specific instance where faulty work was done, the evidence is conflicting as to which side was to blame therefor. It is certain that the defendant company had two purposes in view—the one, to build the road as cheaply as possible; the other, to get it done and in operation to Paden City by a certain date, when a lot sale, in which substantially the same parties as in the railroad company were interested, was to be made. To accomplish the first purpose, it is clear the defendant company did not keep an experienced engineer employed, but delegated this important work to a youth of 20, the son of one of the parties largely interested in defendant company, who was just from an engineering school, without experience, and who disclaims that he was responsible in the premises or clothed with authority as supervising engineer. In fact, the contention is sought to be made that the plaintiff company should be held responsible for the engineering supervision by reason of some understanding with one of its foremen. This was not in accordance with the terms of the contract, which explicitly provided that the defendant company should provide engineering supervision and the plaintiff should work subject to it and meet its requirements and approval. There is nothing to show that the assumption of this engineering supervision, in modification or change of the contract, by plaintiff company, was made or ratified by such company, or by any of its officers authorized

to bind it. To accomplish the second purpose, the work was rushed, and was necessarily in an uncompleted state at the time when the defendant canceled the contract. No man can tell, under such circumstances, just how the work would have been finished by the plaintiff company, or what just complaints would have arisen concerning it as so completed. The presumption in favor of the honesty and efficiency of the plaintiff company and its work is not rebutted, and therefore I must hold, as a question of fact, that this defense and counterclaim for damages must be denied.

The sixth matter of defense, that of a denial that the contract was ever modified, or any new contract made whereby the plaintiff company was to receive 10 per cent. of the net cost of all material and labor necessary for the construction of the rolling stock, electric car equipment, power house and contents, real estate, and buildings, is also a question of fact, and here the burden is upon plaintiff to show such modification or new contract. The evidence, in my judgment, does not preponderate in favor of such contention, but, on the contrary, the preponderance is against it; and therefore this defense should be sustained, and the item of $900 for "10 per cent. of the actual net cost of $9,000 worth of labor in construction of wells, car barn, and power house, including material for same," should be stricken out of plaintiff's claim and disallowed.

One other question remains to be determined. The plaintiff in its bill alleges that equity, having jurisdiction for the purpose of enforcing its equitable lien for work and labor done under the contract, will take jurisdiction for all purposes, and asks against defendant company the ascertainment of, and an independent decree for, the damages claimed to have been incurred by it by reason of the repudiation or cancellation of the contract by defendant company. I have no doubt of the entire correctness of this view of equity's jurisdiction under ordinary circumstances; but in this case it appears that defendant company, a few days after this suit was brought, was placed by a court of competent jurisdiction in the hands of a receiver. The evidence touching this receivership is very indefinite and unsatisfactory; but I think it may be safely assumed, from what has been produced touching it, that it was involuntary on the part of defendant company, which by reason of its inability to pay its debts is being forced by the proceeding into involuntary liquidation. In such case it has been held in Griffith v. Boom & Lumber Co., 46 W. Va. 56, 33 S. E. 125, that its executory contracts become nugatory, and if such contracts be not adopted by the receiver—

"The contracting party is not entitled to damages as for a breach of such contract, but is only entitled to a just compensation for the actual expenditure of labor and money by him in fulfillment of his contract, subject to a deduction of all sums paid him thereunder."

I frankly say that I have never yet reconciled this ruling with my own private judgment. I, however, was counsel in the case maintaining the opposite view. I am now, as judge, called upon to interpret these questions according to the laws and decisions of the

state and its court of last resort. The principle so held, so far as I can find, has not been reversed by the Supreme Court of Appeals of West Virginia. On the contrary, it has been substantially affirmed in the same case, which went a second time to that court and is reported in 48 S. E. 442. I feel myself, therefore, bound to follow this ruling, and inasmuch as the receiver in this case, so far as appears, did not adopt this executory contract, but acquiesced in its repudiation, made a few days before his appointment, and as no claim is made by plaintiff "for compensation for the actual expenditure of labor and money by it in fulfillment of its contract, subject to a deduction of all sums paid it thereunder," I must deny it the relief asked for in the nature of damages for breach of the contract.

I can see no reason why a reference of this cause to a master commissioner is necessary. In my view of the matter, the plaintiff company has proven its claim for the full amount of $12,101, except as to the item of $900, which should be deducted therefrom, leaving the sum of $11,201, which is entitled to bear interest from September 16, 1903, the date of the account filed; that for this sum and its interest plaintiff, by reason of the recordation of its account and declaration, has acquired a first lien upon the property of said company, which, by reason of the institution of this suit before appointment of a receiver, may be enforced by a sale of such property without delay, and independent of the proceeding appointing such receiver; that the cross-bill should be dismissed, with costs, and plaintiff denied the independent decree for damages because of the breach of the contract asked for by it; and I will so decree.